# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:08-CV-153

ISP CHEMICALS LLC                                                    PLAINTIFF

v.

DUTCHLAND, INC., ET AL.                                              DEFENDANTS/
                                                                     THIRD-PARTY PLAINTIFFS

v.

HALL BLAKE & ASSOCIATES, INC.                                        THIRD-PARTY DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants' Motion for Summary Judgment (Docket #63). Plaintiff has responded (Docket #68). Defendants have replied (Docket #73). Plaintiff has filed a sur-reply (Docket #74). This matter is now ripe for adjudication. For the following reasons, Defendants' Motion for Summary Judgment is DENIED.

## BACKGROUND

Plaintiff ISP Chemicals, LLC ("ISP"), is a limited liability company headquartered in Calvert City, Kentucky. ISP is a supplier of specialty chemicals and products. Defendant Dutchland, Inc. ("Dutchland") is a corporation headquartered in Gap, Pennsylvania. Dutchland's primary business is the design, manufacture, and construction of concrete structures such as those used in waste water treatment tanks. Defendants Paul Stoltzfus and Erik Lederman were Dutchland employees until 2006 and 2007, respectively.

On or about October 12, 2005, ISP entered into a contract with Dutchland. In exchange for approximately $2.5 million, Dutchland agreed to design, construct, and install an above ground, pre-cast waste water treatment tank at ISP's Calvert City facility. The contract

contained a ten year warranty by Dutchland to remedy any structural or non-conforming defects.

ISP was responsible for the preparation of the surrounding soil, and hired Third Party Defendant Hall Blake & Associates, Inc. ("Hall Blake") to investigate the soil and subgrade preparations necessary to support the waste water treatment tank. Dutchland was to provide the "acceptable limits of differential settlement across the tank base" to ISP to aid in its preparations. Dutchland provided these figures, although ISP claims the limits were inappropriate for the design. According to ISP, Hall Blake prepared the soil in accordance with Dutchland's specifications. Dutchland began working on the tank in August of 2006. Work was completed in June of 2007.

On August 24, 2007, ISP began testing the tank by filling it with water. The test revealed leakage around the perimeter of the tank. ISP informed Dutchland of the problem on August 27, 2007. Dutchland visited the tank site and told ISP that the leakage was caused by a grout problem. Cracks in the tank were also discovered sometime in September of 2007. In October, ISP hired a forensic engineering firm, CTL Group ("CTL"), to investigate the cause of the cracks and leakage. ISP provided Dutchland with a copy of CTL's report on December 21, 2007. ISP also demanded that Dutchland submit a plan for correcting the tank's defects as laid out in CTL's report. The CTL report indicated defective grout, cracks in the base slab, and errors in the design calculations. Dutchland and ISP thereafter worked together to develop a repair plan. On May 5, 2008, ISP sent Dutchland a proposed design prepared by CTL. Dutchland responded to ISP on May 21, 2008, advising ISP that "Dutchland will not undertake to perform the work on the tank and that ISP should utilize its own contractors to perform the work."

ISP filed this action on September 22, 2008. ISP's Amended Complaint asserts eight

counts for relief: (I) Breach of Contract (as to Dutchland); (II) Negligence (as to all Defendants); (III) Professional Negligence (as to all Defendants); (IV) Negligent Misrepresentation (as to all Defendants); (V) Contractual Indemnity (as to Dutchland); (VI) Specific Performance (as to Dutchland); (VII) Violation of Kentucky Building Code (as to all Defendants); and (VIII) Negligence Per Se (as to all Defendants). Defendants have moved for summary judgment as to all claims, asserting a one year statute of limitations period for any claims of professional malpractice bars Plaintiff from bringing the present lawsuit.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly

3

supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

Defendants assert that all of Plaintiff's claims are barred by a one year statute of limitations period that applies to professional services. "In diversity cases the law of the State in which a federal court sits must be followed with respect to the statute of limitations . . . ." *Atkins v. Schmutz Mfg. Co.*, 372 F.2d 762, 764 (6th Cir. 1967) (citations omitted). Kentucky Revised Statutes section 413.245 provides:

> Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable, except those provided in KRS 413.140, a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured. Time shall not commence against a party under legal disability until removal of the disability.

Ky. Rev. Stat. Ann. § 413.245. Engineering is considered a "professional service." *Matherly Land Surveying, Inc. v. Gardiner Park Dev., LLC*, 230 S.W.3d 586, 589 (Ky. 2007). The application of section 413.245 is dependent on the "status of the person performing the activity." *Vandevelde v. Falls City Builders, Inc.*, 744 S.W.2d 432, 433 (Ky. Ct. App. 1988).

4

Defendants argue that Plaintiff's allegations address work done by or under the supervision of a professional engineer, and Plaintiff became aware of these claims on August 27, 2007. Because Plaintiff's original complaint was not filed until September 22, 2008, Defendants believe Plaintiff's claims are time-barred. In response, Plaintiff argues that section 413.245 does not apply to the facts of this case because work was done without any oversight or approval by a licensed engineer. Even if the statute does apply, Plaintiff asserts that a genuine issue of material fact exists as to the date upon which Plaintiff first became aware of any claim against Defendants. Finally, Plaintiff urges the Court to find that section 413.245 does not bar all of Plaintiff's claims, either because those claims accrued at a later point in time or were unrelated to the professional services rendered by Defendants.

**I.     Application of Section 413.245**

Although it is clear that section 413.245 applies to engineering services, Plaintiff raises several issues that potentially limit the applicability of the statute in this case. First, Plaintiff asserts that the services performed in this case were not "professional services" because the work was conducted by, and under the supervision of, employees who were not properly licensed in Kentucky. Further, Plaintiff argues that Dutchland is not a Kentucky licensed engineering firm. Plaintiff also notes that Defendants' engineers were not licensed in Kentucky, and therefore, engaged in the unauthorized practice of engineering without a license. Plaintiff argues that an out of state engineering license does not meet the necessary criteria set out in section 413.245.

  *A.*  *Material Facts*

Erik Lederman began working for Dutchland on September 15, 2005. At the time he was hired, he was Dutchland's sole structural engineer. Lederman did a majority of the engineering

5

work on the Calvert City project. Although he was a licensed engineer in several states, Lederman did not obtain his Kentucky license until May 2, 2006.

Lederman reported to Paul Stoltzfus, manager of the design department. Stoltzfus began working for Dutchland in 1989 as a construction laborer. He was promoted to an estimating and design position in 1991, and later promoted again in 1995. Around 2004, Stoltzfus began managing the design department. Stoltzfus was not a licensed engineer. Stoltzfus admits to performing certain tasks related to the Calvert City project on his own, including the differential settlement calculation that was provided to ISP. Stoltzfus left Dutchland at the end of 2006. Lederman left Dutchland in September of 2007.

Lederman's predecessor was Gary Tshudy. Tshudy was a licensed engineer, although there is no evidence that he was licensed in Kentucky. Both Lederman and Stoltzfus testified that the structural engineer position was vacant approximately three to four months prior to Lederman joining Dutchland. However, Dutchland's payroll records indicate that Tshudy worked for Dutchland until May of 2006, several months after Lederman began working for Dutchland. Lederman testified that Tshudy continued to work with Dutchland on a contract basis, but to Lederman's knowledge, Tshudy never worked on the ISP Calvert City project. Stoltzfus also testified that he did not believe Tshudy was involved in the preliminary portion of the Calvert City job. An email from Tshudy dated June 21, 2005, indicates that he worked on the Calvert City project in some capacity at that time.

*B.  Analysis*

The Court believes there is a genuine issue of material fact as to whether the work performed on the Calvert City project was at all times done under the supervision of an engineer.

However, even if all of the work was supervised or performed by a licensed engineer, the statute may not apply. The Court must first address whether professionals who are not licensed in the state of Kentucky receive protection under section 413.245.

The statute references "professional services." Ky. Rev. Stat. Ann. § 413.245. "'[P]rofessional services' means any service rendered in a profession required to be licensed, administered and regulated as professions in the Commonwealth of Kentucky . . . ." Ky. Rev. Stat. Ann. § 413.243. To qualify as a professional service requires two things: (1) the rendering of services as part of a "profession," and (2) that the profession be one that is licensed and regulated by the Commonwealth. *See Plaza Bottle Shop, Inc. v. Al Torstrick Ins. Agency, Inc.*, 712 S.W.2d 349, 350-51 (Ky. Ct. App. 1986). For instance, although an insurance agent is licensed by the state, his services are not considered "professional," and he does not receive protection under section 413.245. *Id.* ("The mere fact that one is licensed or regulated by the state does not make his services 'professional' within the purview of this statute.").

There is no question that engineering qualifies as a profession. *See id.* at 351 ("[T]oday a 'profession' connotes other vocations such as accounting, engineering, and teaching . . . ."). Thus, the issue is whether the prerequisite that the profession be one licensed by the Commonwealth of Kentucky refers to such professions only in general terms (e.g., doctor, lawyer, engineer), or requires a professional to actually be licensed in Kentucky.

The engineering profession is governed by Kentucky Revised Statutes Chapter 322. Under that Chapter, it is a violation of Kentucky law to practice engineering "[u]nless licensed as a professional engineer." Ky. Rev. Stat. Ann. § 322.020(1). A professional engineer is defined as "a person who is licensed as a professional engineer by the board," with the board defined as

7

"the State Board of Licensure for Professional Engineers and Land Surveyors." Ky. Rev. Stat. Ann. § 322.010(1), (3). A business entity may not practice engineering unless at least one employee is a professional engineer and the business entity has been issued a permit by the board. Ky. Rev. Stat. Ann. § 322.060(1)(a); *see also Dynalectric Co. v. Whittenberg Constr. Co.*, No. 5:06-CV-208-R, 2007 WL 1100739, at *2 (W.D. Ky. Apr. 10, 2007).

Kentucky case law addressing sections 413.243 and 413.245 is sparse. The Court could not locate any cases dealing with an out-of-state licensed professional. Rather, the cases generally address the statutes in regards to Kentucky licensed professionals. *See, e.g.*, *Matherly*, 230 S.W.3d at 587 ("MLS also employed several professional engineers licensed in Kentucky . . . ."); *Old Mason's Home of Ky., Inc. v. Mitchell*, 892 S.W.2d 304, 306 (Ky. Ct. App. 1995) ("Mitchell was a registered licensed architect . . ."). The Court finds that *Mitchell* provides the best guidance. In its analysis, the appellate court states as follows:

> In our opinion, the trial court properly concluded the statute-of-limitations provisions of KRS 413.245 governed this action. At all times relevant herein, Mitchell was providing architectural services, albeit pursuant to a contract, for Mason. KRS 413.243 defines "professional services" to mean ". . . [a]ny service rendered in a profession required to be licensed, administered and regulated as professions in the Commonwealth of Kentucky, . . . ." By law, architects are required to be licensed in this Commonwealth. *See* KRS 323.010 and 323.020. Mitchell was a registered licensed architect who owned and operated his own business.

*Mitchell*, 892 S.W.2d at 306. Similarly, engineers are required by law to be licensed in Kentucky in order to practice engineering. The appellate court in *Mitchell* used this factor in its analysis of the application of section 413.245 to Mitchell, and the same reasoning applies here. In this case, Tshudy and Lederman were not licensed in the Commonwealth of Kentucky at the time of the Calvert City project. Therefore, unlike Mitchell, these engineers are not considered

8

to have been engaged in "professional services."

The Court also believes this outcome makes sense as a policy matter. By practicing engineering within the Commonwealth of Kentucky without Kentucky licensure, Tshudy and Lederman were in clear violation of Kentucky Revised Statutes section 322.020. Why should those who ignore the licensure requirements of the Commonwealth then be allowed to reap the benefits of a system in which they have not participated? Defendants' argument that such an interpretation places an impermissible burden on interstate commerce is nonsensical. This is not a case involving discrimination between in-state and out-of-state residents. Kentucky's licensing requirements apply equally to all who wish to practice engineering within the Commonwealth of Kentucky.

Further, to provide professional services in Kentucky you must be in a profession required to be licensed, administered, and regulated as a profession in the Commonwealth. To practice engineering in Kentucky, you must be licensed as a professional engineer by a board of the state. The logical reading of sections 413.245, 322.010, and 322.020 together means engineering is a professional service performed by an engineer licensed by the state. There is no residency restriction on licensing.

Because Dutchland did not employ an engineer licensed in Kentucky up until Lederman became licensed in May of 2006, any work prior to that date does not receive the protection of section 413.245. There is evidence that Stoltzfus and Lederman performed work on the Calvert City project prior to that date. Further, Stoltzfus was not an engineer, licensed or otherwise. However, the actual construction of the tank did not begin until August of 2006, after Lederman received his Kentucky license, and was not completed until June of 2007. Any work performed

or supervised by Lederman after he received his license is subject to the one year statute of limitations. Thus, there is a genuine issue of material fact as to whether the work done or supervised by Lederman prior to or after his Kentucky licensure was the cause of Plaintiff's claims, and whether the one year statute of limitations applies.

## II. Accrual of Claims

Assuming, *arguendo*, that the one year statute of limitations period applies, the Court must determine when Plaintiff's claims accrued. Plaintiff filed this action on September 22, 2008. Therefore, if Plaintiff's claims accrued before September 22, 2007, and it is determined that the statute of limitations applies, those claims are time-barred.

In order to satisfy the statute of limitations, Plaintiff's claim must "be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured." Ky. Rev. Stat. Ann. § 413.245. As the Kentucky Supreme Court explained:

> The statute actually provides two different limitations periods: one year from the date of the "occurrence," and one year from the date of the actual or constructive discovery of the cause of action. *Michels v. Sklavos*, 869 S.W.2d 728, 730 (Ky. 1994).
>
> The 'occurrence' limitation period begins to run upon the accrual of the cause of action. *Id.* The accrual rule is relatively simple: "'[A] cause of action is deemed to accrue in Kentucky where negligence and damages have both occurred . . . . [T]he use of the word "occurrence" in KRS 413.245 indicates a legislative policy that there should be some definable, readily ascertainable event which triggers the statute.'" *Id.* at 730 (quoting *Northwestern Nat. Ins. Co. v. Osborne*, 620 F. Supp. 126, 128 (E.D. Ky. 1985)) (alterations in original). Basically, "a 'wrong' requires both a negligent act and resulting injury. *Damnum absque injuria*, harm without injury, does not give rise to an action for damages against the person causing it." *Id.* at 731. The difficult question when applying the rule is usually not whether negligence has occurred but whether an "'irrevocable non-speculative injury'" has arisen. *Id.* at 730 (quoting *Northwestern Nat. Ins. Co. v. Osborne*, 610 F. Supp. 126, 128 (E.D. Ky. 1985)).

10

> The second or "discovery" limitation period begins to run when the cause of action was discovered or, in the exercise of reasonable diligence, should have been discovered. *Id.* at 730. This rule is a codification of the common law discovery rule, *id.* at 732, and often functions as a "savings" clause or "second bite at the apple" for tolling purposes.

*Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 147-48 (Ky. 2007). The discovery limitation period "presumes that a cause of action has accrued . . . but that it has accrued in circumstances where the cause of action is not reasonably discoverable, and it tolls the running of the statute of limitations until the claimant knows, or reasonably should know, that the injury has occurred." *Michels*, 869 S.W.2d at 732. The requirement that a cause of action accrue at the time of discovery means that "*all elements* of the cause of action be known or discoverable." *Lane v. Richards*, 256 S.W.3d 581, 584 (Ky. Ct. App. 2008) (emphasis in original). However, there is no requirement that a specified amount of damages must be known. *See Matherly*, 230 S.W.3d at 591; *Estill County Bd. of Educ. v. Zurich Ins. Co.*, 84 F. App'x 516, 519 (6th Cir. 2003) ("The statute does not require that the plaintiff be aware of the precise dollar amount or even the extent of the damage.").

In this case, Defendants argue that the date of discovery was August 27, 2007, the date on which Plaintiff informed ISP that Plaintiff had filled the tank with water and leakage occurred. The Court finds that the undisputed evidence demonstrates that negligence had occurred prior to the time Plaintiff observed leakage from the tank. The issue thus becomes whether, on August 27, 2007, Plaintiff knew, or reasonably should have known, of an injury and cause of action. Plaintiff's Amended Complaint contains several causes of action, which Defendants allege are all time-barred because of the August 27, 2007, discovery date. The Court examines each cause of action separately.

11

A. *Negligence and Professional Negligence*

The Court considers Plaintiff's claims of negligence and professional negligence together. In order to establish a claim of negligence, a plaintiff must be able to show duty on the part of the defendant, breach of that duty and injury as a result of the breach. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). In a professional negligence case, a professional is held to a higher standard of care "typically measured by the standard of conduct customary in the profession under the circumstances." *Boland-Maloney Lumber Co., Inc. v. Burnett*, 302 S.W.3d 680, 686 (Ky. Ct. App. 2009).

The Court finds that Plaintiff knew or should have known of a negligence cause of action on August 27, 2007. Leakage is clearly an injury that would not have occurred but for some error. The fact that Plaintiff did not know if Dutchland or Hall Blake was at fault is irrelevant, as Plaintiff should have been aware at that time that a cause of action for negligence existed against one or both of the companies. Further, even though Dutchland represented the problem as an easy fix, the cause of action still accrued on that date. Therefore, if the statute of limitations applies, it serves as an absolute bar to Plaintiff's claims for negligence and professional negligence.

B. *Breach of Contract*

Plaintiff alleges that Dutchland breached its contract by improperly designing and constructing the tank, failing to supervise construction, and failing to honor express and implied warranties. To establish a claim for breach of contract, a party must demonstrate the existence of a contract, a breach of that contract, and resulting damages. *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007). At the time Plaintiff discovered leaks

and cracks in the tank, Plaintiff knew or should have known that the contract had been breached in that Plaintiff had failed to properly design and construct the tank, or to properly supervise the tank's construction. It is immaterial that Dutchland might have misrepresented the cause of the problem to Plaintiff at the time, as any breach, no matter how minor, presents a cause of action. *See, e.g.*, *Trinity Universal Ins. v. Mills*, 169 S.W.2d 311, 315 (Ky. 1943).

Plaintiff argues that the claim for breach of warranty must survive because the cause of action did not accrue until May of 2008, a warranty to repair does not constitute "professional services," and Dutchland's express warranty requires Dutchland to comply for a ten year period, thus negating any one year statute of limitations. In contrast, Dutchland believes Plaintiff's breach of warranty claim is merely an attempt to label Plaintiff's claim for professional negligence as something else in order to survive the one year statute of limitations.

"The rule is firmly established in Kentucky that a statute of limitations which specifically mentions a recognized tort applies to all actions founded on that tort regardless of the method by which it is claimed the tort has been committed." *Lashlee v. Sumner*, 570 F.2d 107, 109 (6th Cir. 1978) (citing *Skaggs v. Stanton*, 532 S.W.2d 442 (Ky. 1975)). In addition, "a specific statute of limitations covers all actions whose real purpose is to recover for the injury addressed by it in preference to a general statute of limitations." *Id.* (citing *Carr v. Tex. E. Transmission Corp.*, 344 S.W.2d 619 (Ky. 1961)). Thus, the Sixth Circuit found in *Lashlee* that because an essential element of each cause of action in the complaint was the publication of "an utterly false derogatory report," the entire action stemmed from a libel claim, and the one year statute of limitations for libel applied to all of the plaintiff's claims. *Id.* In the same manner, the *Matherly* court found the plaintiff's breach of contract claim was time-barred under section 413.245

because it "stems from the performance or lack of performance of professional services . . . ." 230 S.W.3d at 590.

The Court finds that Plaintiff's breach of warranty claim must be founded on the tort of professional negligence or malpractice. An essential element of the claim is that Dutchland was somehow negligent in providing professional services, and now refuses to fix its poor workmanship. Therefore, it is impossible to separate the breach of warranty claim from the negligence claim. Allowing Plaintiff to bring a breach of warranty claim would only serve to thwart the purpose of section 413.245. In sum, should the one year statute of limitations apply to Plaintiff's negligence claim, the Court cannot allow Plaintiff's current breach of warranty claim to proceed.

### C. *Negligent Misrepresentation*

Plaintiff alleges that Defendants "supplied false information regarding the design and construction of the Tank and failed to exercise reasonable care in obtaining and communicating the information." (Amended Compl. ¶ 64.) Plaintiff then relied on this false information and alleges that Defendants are liable for "all costs incurred as a result of the Tank's failure." (Amended Compl. ¶ 68.)

In an unpublished decision, the Kentucky Court of Appeals found that section 413.245 did not apply to a claim of negligent misrepresentation. *Mid States Steel Products Co. v. Univ. of Ky.*, Nos. 2003-CA-002509-MR, 2003-CA-002694-MR, 2004-CA-001434-MR, 2006 WL 1195914, *12 (Ky. Ct. App. May 5, 2006). Acknowledging that no Kentucky precedent existed, the court relied on a Texas Court of Appeals case which stated:

> [A] negligent misrepresentation claim is not equivalent to a professional malpractice claim . . . . Under a negligent misrepresentation theory, liability is

> not based on professional duty; instead, liability is based on an independent duty to avoid misstatements intended to induce reliance.

*Id.* (quoting *Safeway Managing Gen. Agency, Inc. v. Clark & Gamble*, 985 S.W.2d 166, 169 (Tx. Ct. App. 1998)).

This district was asked to examine the same issue in 2009. *See Van Eekeren Family, LLC v. Carter & Burgess, Inc.*, No. 4:07-CV-137-JHM, 2009 WL 541265, *3-4 (W.D. Ky. Mar. 4, 2009). In that case, Judge McKinley held that *Mid States* was not binding precedent, nor persuasive reasoning applicable to the case before him. *Id.* at *4. Instead, the court ruled as follows regarding the application of section 413.245:

> The fact of the matter is that Plaintiff's distinction between errors in design and a failure to timely disclose information is without relevant difference. KRS § 413.245 contemplates only whether an action 'arises out of any act or omission in rendering professional services'; as long as it does, the provision applies. Here, Defendant's failure to make 'timely disclosures' was an act or omission in the course of rendering professional services that gave rise to the Plaintiff's misrepresentation claim. Accordingly, Plaintiff's negligent misrepresentation claim is subject to the one-year limitations period in KRS § 413.245.

*Id.* at *4. Both *Van Eekeren* and *Mid States* involved professional negligence claims of faulty design drawings, and negligent misrepresentation claims citing failure to timely provide accurate information. *Id.* at *2; 2006 WL 1195914 at *11.

The Court acknowledges that the Kentucky Court of Appeals is correct in stating that a negligent misrepresentation claim is not the equivalent of a professional malpractice claim. The statute of limitations period set out in section 413.245, however, was intended to encompass additional claims beyond those labeled "professional negligence" or "professional malpractice." As Judge McKinley points out, it applies to all claims arising from the rendering of professional services. Therefore, the Court find that Judge McKinley's reasoning is applicable here.

15

Plaintiff's negligent misrepresentation claim alleges that ISP relied on oral and written representations by Defendants "regarding the design and construction of the Tank." (Amended Compl. ¶ 61.) Further, "Defendants supplied false information regarding the design and construction of the Tank . . . ." (Amended Compl. ¶ 64.) The design and construction of the tank are clearly issues generally handled by a professional engineer. Moreover, the false information provided to Plaintiff is directly related to the design defects alleged in Plaintiff's negligence claims. The harm to Plaintiff is the same.

This case is complicated, however, by the fact that the parties disagree over who made such misrepresentations, and whether that person was a licensed engineer. Therefore, in order for this claim to be barred by the statute of limitations, Plaintiff must establish that Lederman, after receiving his Kentucky licensure, was solely responsible for these misrepresentations.

        D.      *Violation of Kentucky Building Code and Negligence Per Se*

Plaintiff further alleges that Defendants violated the Kentucky Building Code by failing to perform a seismic analysis. Due to Defendants' failure to perform the required seismic testing and violations of the Kentucky Building Code, Plaintiff also argues that Defendants are liable under a theory of negligence per se. Plaintiff argues that these claims are entirely unrelated to the leakage observed on August 27, 2007.

Similar to Plaintiff's breach of warranty claim, each of these claims rests on Defendants' negligence in rendering professional services. These claims have the same object: to recover for the alleged injuries caused by Defendants' professional malpractice. *See, e.g.*, *Carr*, 344 S.W.2d at 620 ("The rule, therefore, is that it is the *object* rather than the *form* of the action which controls in determining the limitation period." (emphasis in original)). The responsibility of

ensuring a structure is up to code lies with the engineer, and deviation from the code would constitute malpractice. Further, Plaintiff's argument that this claim is entirely unrelated is directly contradicted by Plaintiff's Amended Complaint which states: "Defendants' failure to conform to the KBC and other applicable and pertinent standards is the proximate cause of the damage which has resulted from, is resulting from and will continue to result from *the leaking of the tank*." (Amended Compl. ¶ 84 (emphasis added).) Accordingly, should the statute of limitations apply, Plaintiff may not bring these claims.

### E. *Contractual Indemnity & Specific Performance*

Plaintiff's contractual indemnity and specific performance claims are both dependent on a finding of liability on the part of Dutchland, particularly for other claims such as breach of contract and improper performance. As the statute of limitations issue has already become more complicated than anticipated, the Court declines to address these two claims until the applicability of the statute of limitations as to the other claims is clarified.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is DENIED.