# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:08-CV-153

**ISP CHEMICALS LLC**                                    **PLAINTIFF**

v.

**DUTCHLAND, INC., ET AL.**                              **DEFENDANTS/**
                                                         **THIRD-PARTY PLAINTIFFS**

v.

**HALL BLAKE & ASSOCIATES, INC.**         **THIRD-PARTY DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants' Motion for Reconsideration (Docket #90). Plaintiff has responded (Docket #96). Defendants have replied (Docket #101). Plaintiff has filed a sur-reply (Docket #112). This matter is now ripe for adjudication. For the following reasons, Defendants' Motion for Reconsideration is GRANTED.

## BACKGROUND

Plaintiff ISP Chemicals, LLC ("ISP"), is a limited liability company headquartered in Calvert City, Kentucky. ISP is a supplier of specialty chemicals and products. Defendant Dutchland, Inc. ("Dutchland") is a corporation headquartered in Gap, Pennsylvania. Dutchland's primary business is the design, manufacture, and construction of concrete structures such as those used in waste water treatment tanks. Defendants Paul Stoltzfus and Erik Lederman were Dutchland employees until 2006 and 2007, respectively.

On or about October 12, 2005, ISP entered into a contract with Dutchland. In exchange for approximately $2.5 million, Dutchland agreed to design, construct, and install an above ground, pre-cast waste water treatment tank at ISP's Calvert City facility. The contract contained a ten year warranty by Dutchland to remedy any structural or non-conforming defects.

ISP was responsible for the preparation of the surrounding soil, and hired Third Party Defendant Hall Blake & Associates, Inc. ("Hall Blake") to investigate the soil and subgrade preparations necessary to support the waste water treatment tank. Dutchland was to provide the "acceptable limits of differential settlement across the tank base" to ISP to aid in its preparations. Dutchland provided these figures, although ISP claims the limits were inappropriate for the design. According to ISP, Hall Blake prepared the soil in accordance with Dutchland's specifications. Dutchland began working on the tank in August of 2006. Work was completed in June of 2007.

On August 24, 2007, ISP began testing the tank by filling it with water. The test revealed leakage around the perimeter of the tank. ISP informed Dutchland of the problem on August 27, 2007. Dutchland visited the tank site and told ISP that the leakage was caused by a grout problem. Cracks in the tank were also discovered sometime in September of 2007. In October, ISP hired a forensic engineering firm, CTL Group ("CTL"), to investigate the cause of the cracks and leakage. ISP provided Dutchland with a copy of CTL's report on December 21, 2007. ISP also demanded that Dutchland submit a plan for correcting the tank's defects as laid out in CTL's report. The CTL report indicated defective grout, cracks in the base slab, and errors in the design calculations. Dutchland and ISP thereafter worked together to develop a repair plan. On May 5, 2008, ISP sent Dutchland a proposed design prepared by CTL. Dutchland responded to ISP on May 21, 2008, advising ISP that "Dutchland will not undertake to perform the work on the tank and that ISP should utilize its own contractors to perform the work."

ISP filed this action on September 22, 2008. ISP's Amended Complaint asserts eight counts for relief: (I) Breach of Contract (as to Dutchland); (II) Negligence (as to all Defendants);

(III) Professional Negligence (as to all Defendants); (IV) Negligent Misrepresentation (as to all Defendants); (V) Contractual Indemnity (as to Dutchland); (VI) Specific Performance (as to Dutchland); (VII) Violation of Kentucky Building Code (as to all Defendants); and (VIII) Negligence Per Se (as to all Defendants).  On March 5, 2010, Defendants moved for summary judgment as to all claims, asserting a one year statute of limitations period for any claims of professional malpractice bars Plaintiff from bringing the present lawsuit.  The Court denied the motion on August 6, 2010.  Defendants have now asked the Court to reconsider its denial of the motion for summary judgment.

## DISCUSSION

Defendants urge the Court to reconsider its ruling that Kentucky Revised Statutes section 413.245 applies only to engineers who are licensed by the Commonwealth of Kentucky.  Section 413.245 provides for a one year statute of limitations period for civil actions "whether brought in tort or contract" which arise out of "any act or omission in rendering, or failing to render, professional services for others . . . ."  Ky. Rev. Stat. Ann. § 413.245.  "Professional services" is defined by section 413.243 as "any service rendered in a profession required to be licensed, administered and regulated as professions in the Commonwealth of Kentucky . . . ."  Ky. Rev. Stat. Ann. § 413.243.

In the Court's August 6, 2010, Memorandum Opinion and Order, the Court had to determine if an out-of-state licensed engineer is covered by the one year statute of limitations period in section 413.245.  The Court analyzed the relevant statutes, the few cases from Kentucky courts addressing section 413.245 in the engineering context, and the licensure requirements for engineers under sections 322.010 and 322.020, which state that in order to

3

practice engineering in Kentucky, a professional engineer must be licensed by the State Board of Licensure. The Court held:

> [T]o provide professional services in Kentucky you must be in a profession required to be licensed, administered, and regulated as a profession in the Commonwealth. To practice engineering in Kentucky, you must be licensed as a professional engineer by a board of the state. The logical reading of sections 413.245, 322.010, and 322.020 together means engineering is a professional service performed by an engineer licensed by the state.

Mem. Op. & Order, DN 83, p. 9. In addition, the Court held that limiting section 413.245's applicability to Kentucky licensed engineers made sense as a policy matter in order to prevent those who ignore the licensure requirements from later reaping benefits of a system in which they did not participate.

Defendants now seek to persuade the Court to reverse its earlier holding by arguing that the Court's narrow view of "professional services" is contrary to common sense, in that a professional engineer retains his education and experience despite crossing state lines. In addition, Defendants believe seeking a license to practice engineering is analogous to an attorney seeking admission to a court *pro hac vice*, in that the attorney may still counsel her client and assist local counsel while the *pro hac vice* motion is pending. Defendants argue that if the General Assembly intended to limit section 413.245, the in-state licensure requirements could have been specifically referenced in section 413.243.

There is no legislative history to guide the Court and essentially no case law directly on point. Both parties have presented logical arguments on this issue to the Court and the Court admits this is a close call. Upon further consideration of the issue, however, the Court finds that the Kentucky legislature and the Kentucky Supreme Court must have intended for section 413.245 to apply to all engineers, not just those licensed in the Commonwealth of Kentucky.

Defendants' motion caused the Court to revisit the issue on all fronts, and the Court concedes that its initial ruling was too narrow. In light of the Court's additional research and consideration, the Court adopts Defendants' position.

At issue in the definition of "professional services" is the language "in a profession required to be licensed, administered and regulated as professions in the Commonwealth of Kentucky . . . ." Ky. Rev. Stat. Ann. § 413.243. The Supreme Court of Kentucky clearly recognizes that "engineering is a professional service under KRS 413.245." *Matherly Land Surveying, Inc. v. Gardiner Park Dev., LLC*, 230 S.W.3d 586, 589 (Ky. 2007). The Kentucky Supreme Court does not state that the engineer must be licensed. Rather, it refers to engineering in general terms. *See id.*

In addition, the Court believes that the language on licensure within section 413.243 is only included in order to define the parameters of what is considered a profession. Courts across the nation have struggled with the definition of a professional, and three tests have emerged: (1) professions recognized by the common law; (2) professions licensed by the state; and (3) an intermediate approach between (1) and (2). 5 Litigating Tort Cases § 64:14 (Roxanne Barton Conlin & Gregory S. Cusimano eds., 2010) (citing Michael J. Polelle, *Who's on First, and What's a Professional?*, 33 U.S.F. L. REV. 205, 219-20 (1999)). The Court believes the Kentucky legislature intended for its inclusion of the licensure portion of the definition of "professional services" to help identify a professional only. This fits with second test, which defines a professional as one licensed by the state. Kentucky courts later adopted a more intermediate approach, as in the third test, by interpreting the statute to exclude "services rendered in a *trade or occupation* . . . ." *Plaza Bottle Shop, Inc. v. Al Torstrick Ins. Agency, Inc.*,

5

712 S.W.2d 349, 350 (Ky. Ct. App. 1986) (emphasis in original). "The mere fact that one is licensed or regulated by the state does not make his services 'professional' within the purview of this statute." *Id.* at 350-51.

The Court finds that the inclusion of any licensure requirement within section 413.243 was meant only to help identify those professions which receive protection under section 413.245. In addition, the Kentucky Supreme Court has clearly held that engineering is one such profession. *Matherly*, 230 S.W.3d at 589. Accordingly, section 413.245 applies to all engineers, not just those licensed by the state of Kentucky. Both Lederman and Tshudy receive protection for their professional services rendered while employed with Dutchland.

The Court is well aware of the substantial effect this opinion will have on the remainder of this case. The Court briefly discussed application of the statute of limitations to Plaintiff's claims in the August 6, 2010, Memorandum Opinion and Order. A few issues as to that portion of the opinion have arisen. First, Defendants argue that section 413.245 also applies to work done by non-engineers, such as Paul Stoltzfus, because such work is inextricably intertwined with that of licensed engineers, who have ultimate responsibility for the project. Second, Plaintiff argues that section 413.245 does not apply to Dutchland as a corporate entity. Finally, Plaintiff asserts that many of its claims are not governed by section 413.245 because they are unrelated to the engineering design of the tank.

In order for the Court to fully consider these issues in light of this opinion, the parties shall brief these three issues and submit simultaneous briefs by October 29, 2010. Any responses shall be filed by November 5, 2010.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Reconsideration is GRANTED. In light of this opinion, the parties shall present briefs to the Court on the remaining issues by **October 29, 2010**. Responses shall be filed by **November 5, 2010.**