# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:08-CV-153

ISP CHEMICALS LLC                                                             PLAINTIFF

v.

DUTCHLAND, INC., ET AL.                                   DEFENDANTS/
                                                                                                    THIRD-PARTY PLAINTIFFS

v.

HALL BLAKE & ASSOCIATES, INC.                 THIRD-PARTY DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon the additional briefing requested by the Court in response to the Court's ruling on Defendants' Motion for Reconsideration (Docket #90). Plaintiff has fully briefed the issues (Docket #137, 141, 143). Defendants have fully briefed the issues (Docket #136, 140, 142). This matter is now ripe for adjudication.

## BACKGROUND

Plaintiff ISP Chemicals, LLC ("ISP"), is a limited liability company headquartered in Calvert City, Kentucky. ISP is a supplier of specialty chemicals and products. Defendant Dutchland, Inc. ("Dutchland") is a corporation headquartered in Gap, Pennsylvania. Dutchland's primary business is the design, manufacture, and construction of concrete structures such as those used for waste water treatment tanks. Defendants Paul Stoltzfus and Erik Lederman were Dutchland employees until 2006 and 2007, respectively.

On or about October 12, 2005, ISP entered into a contract with Dutchland. In exchange for approximately $2.5 million, Dutchland agreed to design, construct, and install an above ground, pre-cast waste water treatment tank at ISP's Calvert City facility. The contract contained a ten year warranty by Dutchland to remedy any structural or non-conforming defects.

ISP was responsible for the preparation of the surrounding soil, and hired Third Party Defendant Hall Blake & Associates, Inc. ("Hall Blake") to investigate the soil and subgrade preparations necessary to support the waste water treatment tank. Dutchland was to provide the "acceptable limits of differential settlement across the tank base" to ISP to aid in its preparation of the soil. Dutchland provided these figures, and according to ISP, Hall Blake prepared the soil in accordance with Dutchland's specifications. Dutchland began working on the tank in August of 2006. Construction of the tank was completed in June of 2007.

On August 24, 2007, ISP began testing the tank by filling it with water. The test revealed leakage around the perimeter of the tank. ISP informed Dutchland of the problem on August 27, 2007. Dutchland visited the tank site and told ISP that the leakage was caused by a grout problem. Cracks in the tank were also discovered sometime in September of 2007. In October, ISP hired a forensic engineering firm, CTL Group ("CTL"), to investigate the cause of the cracks and leakage. ISP provided Dutchland with a copy of CTL's report on December 21, 2007. ISP also demanded that Dutchland submit a plan for correcting the tank's defects as laid out in CTL's report. The CTL report indicated defective grout, cracks in the base slab, and errors in the design calculations. Dutchland and ISP thereafter worked together to develop a repair plan. On May 5, 2008, ISP sent Dutchland a proposed design prepared by CTL. Dutchland responded to ISP on May 21, 2008, advising ISP that "Dutchland will not undertake to perform the work on the tank and that ISP should utilize its own contractors to perform the work."

ISP filed this action on September 22, 2008. ISP's Amended Complaint asserts eight counts for relief: (I) Breach of Contract (as to Dutchland); (II) Negligence (as to all Defendants); (III) Professional Negligence (as to all Defendants); (IV) Negligent Misrepresentation (as to all

Defendants); (V) Contractual Indemnity (as to Dutchland); (VI) Specific Performance (as to Dutchland); (VII) Violation of Kentucky Building Code (as to all Defendants); and (VIII) Negligence Per Se (as to all Defendants). On March 5, 2010, Defendants moved for summary judgment as to all claims, asserting a one year statute of limitations period for any claims of professional malpractice bars Plaintiff from bringing the present lawsuit. The Court denied the motion on August 6, 2010, finding that the one year statute of limitations period in Kentucky Revised Statutes section 413.245 does not apply to out-of-state licensed engineers performing work within Kentucky. Defendants then asked the Court to reconsider its denial of the motion for summary judgment. The Court granted this motion, reversing its prior opinion and finding that the one year statute of limitations period of section 413.245 applies to all engineers, not just those licensed by the Commonwealth of Kentucky.

Following this ruling, the Court requested additional briefing on three subjects: (1) whether section 413.245 also applies to work performed by non-engineers, such as Paul Stoltzfus; (2) whether section 413.245 applies to Dutchland as a corporate entity; and (3) whether some of Plaintiff's claims are not governed by section 413.245 because they are unrelated to the engineering design of the tank. The parties have fully briefed these issues.

## DISCUSSION

**I.     Does Section 413.245 Apply to Work Performed by Non-Engineers?**

Section 413.245 provides for a one year statute of limitations period for civil actions "whether brought in tort or contract" which arise out of "any act or omission in rendering, or failing to render, professional services for others . . . ." Ky. Rev. Stat. Ann. § 413.245. "Professional services" is defined by section 413.243 as "any service rendered in a profession

3

required to be licensed, administered and regulated as professions in the Commonwealth of Kentucky . . . ." Ky. Rev. Stat. Ann. § 413.243. The Court already determined that section 413.245 applies to the work performed by the two out-of-state licensed engineers employed by Dutchland, Gary Tshudy and Erik Lederman.[1] The parties now disagree over section 413.245's application to work performed by non-engineers who were not supervised by a licensed engineer at the time their work was performed.

Specifically, the parties dispute whether section 413.245 applies to Paul Stoltzfus[2] and his calculation of the four inch differential settlement figure which was thereafter provided to ISP for purposes of preparing the soil. Plaintiff argues that because neither Lederman nor Tshudy were involved in the project at the time Stoltzfus made his calculation, section 413.245 does not apply. In contrast, Defendants argue that Tshudy, a licensed engineer, was working on the differential settlement calculation during the bid and preliminary design process. Once Lederman took over the project, Defendants argue, he had ultimate responsibility for the design of the tank, including the differential settlement calculation. Therefore, any negligence on Lederman's part to verify the figures before approving the design plans does not preclude the application of section 413.245. Finally, Defendants argue that the four inch differential settlement calculation would not have been a problem but for Lederman's failure to design for such a differential, or to change the differential calculation in his design. Thus, fault lies with

---

[1] Erik Lederman began working for Dutchland on September 15, 2005, and left Dutchland in September of 2007. His predecessor was Gary Tshudy. *See* Mem. Op. & Order, DN 83, p. 5-6.

[2] Paul Stoltzfus was manager of Dutchland's design department from 2004 to 2006. He is not a professional engineer. *See* Mem. Op. & Order, DN 83, p. 6.

Lederman, not Stoltzfus.

Both parties acknowledge that section 413.245 applies to the actions of non-engineers in some instances. *See Matherly Land Surveying, Inc. v. Gardiner Park Dev., LLC*, 230 S.W.3d 586, 589-90 (Ky. 2007). The parties disagree, however, as to its applicability in this case.

In *Matherly*, the plaintiff hired an engineering firm to perform "numerous tasks that require the services of a professional engineer." 230 S.W.3d at 590. Although some of the tasks performed, such as land surveying, did not require the use of a professional engineer, the Kentucky Supreme Court held that the statute of limitations period in section 413.245 applied to all such tasks because the defendant firm "held itself out as a professional engineering firm and had a professional engineer . . . overseeing work on the project - including the land surveying tasks." *Id.* The *Matherly* court also cited to *Lapham v. Stewart*, 51 P.3d 396 (Id. 2002), in noting that the relationship between engineering and land surveying is similar to a relationship between a paralegal and an attorney.[3] *Id.* In *Lapham*, the Idaho Supreme Court held that a legal secretary's actions were subject to the Idaho professional negligence statute of limitations because the legal secretary was "carrying out the responsibilities [the attorney] delegated to her . . . ." 51 P.3d at 403.

Plaintiff relies on Kentucky Revised Statutes section 322.030 for the proposition that section 413.245 only covers the work of a non-engineer if such work was "done under the direct supervision of and verified by [a] professional engineer . . . ." Ky. Rev. Stat. Ann. § 322.020(1)(a). Under section 322.020, a person may not engage in the practice of engineering

---

[3]The *Matherly* court also cites to *Underhill v. Stephenson*, 756 S.W.2d 459, 460 (Ky. 1988), which held that nursing is a professional service subject to section 413.245 under the circumstances of that case.

5

unless they are licensed as a professional engineer or fall under one of the exceptions stated in section 322.030, such as the "direct supervision" provision. *See* Ky. Rev. Stat. Ann. §§ 322.020(1), 322.030. Plaintiff asserts that section 322.020 must be read in conjunction with section 413.245 because these two statutes are part of a whole scheme relating to the professional services of an engineer. *See State Farm Mut. Auto. Ins. Co. v. Fletcher*, 578 S.W.2d 41, 43 (Ky. 1979).

Defendants, on the other hand, believe that work performed by a non-engineer is covered by section 413.245 as long as a licensed engineer has the "ultimate responsibility" for the non-engineer's work. Defendants argue that the differential settlement figure calculated by Stoltzfus was an integral part of the tank's design, and something that Lederman, as the Engineer of Record, was obligated to address. By failing to address this issue, Lederman was at fault since he was the only employee authorized to sign off and seal the Calvert City design drawings and calculations. Thus, Plaintiff's claims against Stoltzfus are really claims against Lederman.

The Court believes *Matherly* dictates that, at a minimum, a licensed engineer must have some oversight over a non-engineer's work in order for such work to be covered by section 413.245. This may include the delegation of work to a non-engineer, as in *Lapham*.

In this case, a genuine issue of material fact exists as to whether any licensed engineer had oversight of Stoltzfus's work, or delegated such work to him for completion. Plaintiff argues that Stoltzfus's deposition clearly states that he was not working with any engineer at the time he calculated the differential settlement figure. In contrast, an email string between Tshudy and ISP indicates that Tshudy may have had a hand in calculating the figure, or may have delegated the task to Stoltzfus. This is enough to create a genuine issue of material fact.

6

Accordingly, summary judgment is DENIED as to the claims against Stoltzfus at this time, provided such claims are based upon the differential settlement figure.

## II. Does Section 413.245 Apply to Dutchland as a Corporate Entity?

The Court has already determined that section 413.245 applies to the work of Lederman and Tshudy as licensed engineers, but has yet to determine if the statute also applies to Dutchland as a corporate entity. In *Matherly*, the Kentucky Supreme Court held that section 413.245 applied to Matherly Land Surveying, Inc. ("MLS"), a professional engineering firm licensed in Kentucky. 230 S.W.3d at 587. The court noted "MLS held itself out as a professional engineering firm and had a professional engineer . . . overseeing work on the project . . . ." *Id.* at 590. Likewise, in *City of Science Hill v. Mayes, Suddenerth & Etheredge, Inc.*, the Kentucky Court of Appeals held that section 413.245 applied to a "professional engineering firm" which served as the engineer overseeing the project at issue in that case. No. 2003-CA-001903-MR, 2005 WL 1313681, at *1, 6 (Ky. Ct. App. June 3, 2005).

According to Plaintiff, section 413.245 does not apply to Dutchland because Dutchland never obtained an engineering permit in accordance with Kentucky Revised Statutes section 322.060, and work on the Calvert City project was performed at times when Dutchland did not employ a professional engineer. In support of its argument, Plaintiff cites to *Dynalectric Co. v. Whittenberg Constr. Co.*, No. 5:06-CV-208-R, 2007 WL 1100739 (W.D. Ky. Apr. 10, 2007). In that case, Judge McKinley held that the defendant, Ray Black & Son, Inc. ("Black"), could not take advantage of the statute of limitations in section 413.245 because "[w]hile Black may be a construction expert, Black is not licensed, administered, or regulated and does not provide professional services as defined by KRS 413.243." *Id.* at *2. Black was hired as construction

7

manager and was not an architectural firm. *Id.* at *1-2 (contrasting *Old Mason's Home of Ky., Inc. v. Mitchell*, 892 S.W.2d 304, 306 (Ky. Ct. App. 1995), where Mitchell was a registered, licensed architect who owned and operated his own business).

The Court finds that *Dynalectric* is distinguishable from the present case. In *Dynalectric*, there was no evidence that Black performed any services which would be considered "professional." In addition, there was no evidence that a professional architect (or engineer) was ever employed by Black. In contrast, Dutchland clearly performed engineering services, which the Supreme Court of Kentucky has found to constitute "professional services." *See Matherly*, 230 S.W.3d at 589. Furthermore, Dutchland employed both Tshudy and Lederman as professional engineers.

Nor does the Court find that *Dynalectric* dictates that Dutchland had to be licensed in Kentucky for section 413.245 to apply. Similar in its application to engineers such as Lederman and Tshudy, section 413.245 applies to engineering firms regardless of whether they have complied with Kentucky's licensing or permit requirements. *Dynalectric* is not at odds with this holding, as that case dealt with an entity that would not have been performing "professional services" and would not have been subject to *any* licensing requirements for the work that was being performed and the people performing it. *See Dynalectric*, 2007 WL 1100739, at *2. In other words, Kentucky does not recognize construction experts as professionals in the same way that it does doctors, lawyers, architects and engineers. *See Plaza Bottle Shop, Inc. v. Al Torstrick Ins. Agency, Inc.*, 712 S.W. 2d 349, 351 (Ky. Ct. App. 1986).

In order to comply with section 413.245, a business entity must be engaged in "professional services," meaning, in effect, that the firm must at least have a professional

engineer on staff. *See Matherly*, 230 S.W.3d at 590; *accord Van Eekeren Family, LLC v. Carter & Burgess, Inc.*, No. 4:07CV-137-JHM, 2009 WL 541265, at *4 (W.D. Ky. Mar. 4, 2009) ("Kentucky courts have held that it is the existence of a professional performing a task and not the nature of the task itself that brings a claim within KRS § 413.245."). In addition, the firm must hold itself out as an engineering firm. *See Matherly*, 230 S.W.3d at 590.[4]

The Court finds that there is a genuine issue of material fact as to whether Dutchland employed an engineer to oversee its various projects at all times or held itself out as an engineering firm. Based upon the available records and deposition testimony, Tshudy's terms and length of employment and his role in the Calvert City project remain unclear. It is apparent, however, that at least some engineering work on the project took place prior to Lederman's employment. Further, the Court knows little about Dutchland as a business entity at this time. Plaintiff argues that Dutchland is not licensed as an engineering firm and has historically outsourced design work to other engineering firms. There is evidence, however, that Dutchland at least agreed to perform the engineering and design work on the Calvert City job and had an engineering department. Accordingly, there remains an issue of fact as to whether Dutchland "held itself out" as an engineering firm. For these reasons, Defendant's motion for summary judgment as to Dutchland is DENIED.

**III.     Are All of Plaintiff's Claims Barred by the Application of Section 413.245?**

Finally, the Court must determine whether section 413.245, where applicable, bars all of Plaintiff's claims because they arise out of "rendering, or failing to render, professional

---

[4]It follows that a business entity's procurement of a license could certainly be favorable evidence that an entity held itself out as an engineering firm.

services." Ky. Rev. Stat. Ann. § 413.245. Plaintiff believes four claims survive, despite the application of section 413.245: (1) the breach of contract claim against Dutchland, insofar as it addresses breach of the ten year warranty; (2) the indemnity claim; (3) the claim alleging violations of the Kentucky Building Code; and (4) the negligent misrepresentation claim against Dutchland and Stoltzfus.

As a preliminary matter, Plaintiff argues that the date of discovery, i.e., the date on which the statute of limitations period begins to run for the professional negligence claim, is a question of fact that should be left to the jury as to all causes of action in this case. The Court previously held in dicta that the date of discovery was August 27, 2007–the date on which Plaintiff informed Dutchland that the tank leaked. Plaintiff believes the discovery date did not occur in August of 2007 because Plaintiff did not know at the time that it had been damaged. In support of this argument, Plaintiff cites to *Estill County Board of Education v. Zurich Insurance Company*, 84 F. App'x 516 (6th Cir. 2003), which held:

> Kentucky courts have interpreted [section 413.245] in the context of legal malpractice actions to mean that the injury is discovered, and therefore the statute of limitations begins to run, only when the legal harm has become "fixed and non-speculative." . . . We find no reason to confine this principle to the attorney malpractice context as neither the statute nor the Kentucky courts differentiate among the various kinds of professional negligence.
>
> . . .
>
> The district court correctly concluded that "the phrase [fixed and non-speculative] is more properly interpreted as tolling the limitations period for professional negligence claims until plaintiff is certain that damages will indeed flow from defendant's negligent act." . . . We think that the Kentucky statute requires that in order for the limitations period to commence, the plaintiff must be aware that he has in fact been damaged by the defendant's negligence. The statute does not require that the plaintiff be aware of the precise dollar amount or even the exact extent of the damage.

10

*Id.* at 519 (internal citations omitted). Plaintiff contends that in August of 2007, when minor leaking was observed, there was no reason for Plaintiff to believe it had been damaged because Defendants represented the issue as a minor grout problem that could be easily fixed.

The Court notes that in August of 2007, when leakage was discovered, there is no question of fact that Defendants had a duty to provide a "leak tight" tank and that this duty was breached, as evident by the subsequent leaking. Thus, there was clearly a negligent act on the behalf of either Defendants or Third-Party Defendants Hall Blake. As noted by the Sixth Circuit in *Estill County*, however, Plaintiff must also have been certain that damages would flow from the incident. Plaintiff argues that there is no such certainty because had the issue been a minor grout problem, Dutchland could have applied additional grout to remedy the problem and Plaintiff would have been left without a cause of action for the leaky tank.

The Court disagrees with Plaintiff's reasoning. Construction of the tank was finished in June of 2007. On August 24, 2007, Plaintiff began to fill the tank with water. On August 27, 2007, Plaintiff notified Dutchland that some leakage had occurred. At this point in time, Plaintiff was aware that it had a leaky tank and that actual damages of some sort would result; it is irrelevant that Plaintiff was unaware of the extent of the damages at the time. Moreover, the standard does not dictate that these damages must be irremediable. Thus, whatever explanation Dutchland may have offered at a later time does not change the fact that construction was complete at that time leaking was discovered, and Plaintiff had not received the "leak tight" tank for which it had contracted. Finally, Kentucky case law notes that the statute of limitations under section 413.245 may be "triggered as soon as defects in workmanship are apparent." *Matherly*, 230 S.W.3d at 591 (referencing *Mitchell*, 892 S.W.2d at 307-08). There is no question

that defects in workmanship were apparent in August of 2007. Accordingly, the Court finds that no genuine issue of material fact exists, and the date of discovery of Plaintiff's professional negligence claim is August 27, 2007.

Turning to Plaintiff's causes of action, the Court analyzes these claims assuming, *arguendo*, that the one year statute of limitations applies to all three Defendants.

        A.        *Breach of Warranty*

"The rule is firmly established in Kentucky that a statute of limitations which specifically mentions a recognized tort applies to all actions founded on that tort regardless of the method by which it is claimed the tort has been committed." *Lashlee v. Sumner*, 570 F.2d 107, 109 (6th Cir. 1978) (citing *Skaggs v. Stanton*, 532 S.W.2d 442 (Ky. 1975)). Plaintiff argues that the reasoning of *Lashlee* does not apply to the breach of warranty claim because Defendants' duty to repair is a separate and distinct obligation from their duty to design the tank. Therefore, Plaintiff argues, the breach of warranty cause of action did not accrue until May of 2008, when Plaintiff learned that Defendants would not honor their warranty. In support of this argument, Plaintiff cites to two cases from other jurisdictions which stand for the proposition that "a claim for breach of warranty does not accrue until the plaintiff discovers or should have discovered the defendant's refusal or inability to comply with the warranties made." *Hersh Companies Inc. v. Highline Vill. Associates,* 30 P.3d 221, 226 (Colo. 2001); *see also Cole v. Zellan*, 55 A.2d 516, 517-18 (D.C. 1947).

The present case differs factually from both *Hersh* and *Cole* in that Plaintiff was still conducting initial testing of the tank when it discovered problems and asked Dutchland to remedy those problems. In contrast, the defendant's work in *Hersh* was completed and final

12

payment had been received prior to any complaints about the defendant's workmanship. 30 P.3d at 222-23. Likewise, in *Cole*, the defendant built a home and included a warranty that the basement would not leak for three years. 55 A.2d at 517. The homeowners assumed ownership of the house and moved in before first complaining of a wet basement. *Id.* In this case, however, the same actions resulted in Plaintiff's breach of contract and breach of warranty claims, and the tank was still in the testing phase. To the Court's knowledge, there was no final acceptance on the part of Plaintiff.

In addition, neither case cited by Plaintiff is binding precedent. Instead, the Court believes the facts of this case dictate that the breach of warranty claim is subject to the one year statute of limitations because it relates to professional services. Plaintiff's breach of warranty claim is founded upon the same injury underlying the professional negligence claim. As noted by the Court in its prior opinion, "[a]llowing Plaintiff to bring a breach of warranty claim would only serve to thwart the purpose of section 413.245." Mem Op. & Order, DN 83, p. 14. It is a tort in this case which arises out of the acts or omissions in rendering or failing to render professional services. For this reason, section 413.245 applies to Plaintiff's breach of warranty claim.

  *B.*  *Indemnity Claim*

In its contract with ISP, Dutchland agreed to indemnify and/or hold harmless Plaintiff for any third-party claims or regulatory penalties. "Kentucky law provides that '[t]he nature of an indemnitor's liability under an indemnity contract shall be determined by the provisions of the indemnity agreement itself.'" *Thompson v. The Budd Co.*, 199 F.3d 799, 807 (6th Cir. 1999) (quoting *United States Fid. & Guar. Co. v. Napier Elec. & Constr. Co.*, 571 S.W.2d 644, 646

13

(Ky. Ct. App. 1978)). The indemnity clause in this case provides:

> In consideration for being retained by ISP as an independent contractor hereunder, [Dutchland] agrees that [Dutchland] shall be liable for, and shall indemnify, defend and hold harmless the ISP Parties from and against any and all liabilities and damages and claims for damages, suits, proceedings, recoveries, judgments, executions, losses, costs, penalties, fines, consequences and expenses (including, but not limited to, litigation costs and expenses and reasonable attorneys' fees, as well as such costs, expenses and fees as may be incurred by any indemnitee in establishing and enforcing its right to indemnification hereunder) which may be made, had, brought or recovered against the ISP Parties or any of them by third parties (including, but not limited to, any Federal, State, county, municipal or local entity), [Dutchland] or [Dutchland's] employees, arising from or related to:
>
> (a) the performance, non-performance or improper performance of any of [Dutchland's] obligations arising from or related to this Contract by [Dutchland], its contractors, subcontractors and/or their respective officers, directors, employees or agents,
>
> (b) the willful misconduct or misrepresentation by [Dutchland], its contractors, subcontractors and/or their respective officers, directors, employees or agents,
>
> (c) any breach of this Contract by [Dutchland], its contractors, subcontractors and or their respective officers, directors, employees or agents,
>
> (d) the failure to comply with ISP's instructions or directions by [Dutchland], its contractors, subcontractors, and/or their respective officers, directors, employees or agents . . . .

Fixed Price Construction Contract, DN 29-1, p. 14-15. Plaintiff argues that a claim for indemnity has a five year statute of limitations period under section 413.120. *See Affholder, Inc. v. Preston Carroll Co.*, 27 F.3d 232, 234 (6th Cir. 1994) (citing Ky. Rev. Stat. Ann. § 413.120). In contrast, Defendants assert that because the indemnity claim is necessarily based on Plaintiff's other claims, it must also be barred by the one year statute of limitations for professional services.

In *Affholder*, the Kentucky Supreme Court certified the law of Kentucky in regards to

14

indemnity claims. 27 F.3d at 232-33. *Affholder* focused on a claim for indemnity by a general contractor against a construction project's engineers, where the general contractor may potentially have been found liable to the project's subcontractor for delays caused by the engineers. *Id.* at 234. The court held that the primary focus of the case was not the professional status of the parties, but rather the issue of indemnity, and the five year statute of limitations should apply. *Id.*

Relying on this precedent, the Court finds that the one year statute of limitations period does not apply to Plaintiff's indemnity claim. Plaintiff's claim for indemnity does not attempt to plead the tort of professional negligence by some other method. *See Lashlee*, 570 F.2d at 109. Rather, Plaintiff seeks to recover through indemnity only if such professional negligence occurred which thereby exposed Plaintiff to liability. *See Affholder*, 27 F.3d at 234. "Indemnity arises where 'one of two parties does an act or creates a hazard and the other, while not concurrently joining in the act, is nevertheless, thereby exposed to liability . . . .'" *Id.* (quoting *Nally v. Boop*, 428 S.W.2d 607, 609 (Ky. 1968)). Plaintiff is seeking to recover for its third party liabilities rather than for its underlying injury. Further, the contractual indemnity clause's coverage is not limited to claims arising from professional services. Accordingly, this claim is not time-barred.

    C.    *Kentucky Building Code Violations*

In the Court's August 6, 2010, Memorandum Opinion and Order, the Court noted in dicta that Plaintiff's claim against Defendants for violations of the Kentucky Building Code ("KBC") would be subject to the one year statute of limitations:

> [This claim] has the same object [as the professional negligence claim]: to recover for the alleged injuries caused by Defendants' professional malpractice. *See, e.g.*,

15

> *Carr [v. Tex. E. Transmission Corp.*], 344 S.W.2d [619,] at 620 ("The rule, therefore, is that it is the *object* rather than the *form* of the action which controls in determining the limitation period." (emphasis in original)). The responsibility of ensuring a structure is up to code lies with the engineer, and deviation from the code would constitute malpractice. Further, Plaintiff's argument that this claim is entirely unrelated is directly contradicted by Plaintiff's Amended Complaint which states: "Defendants' failure to conform to the KBC and other applicable and pertinent standards is the proximate cause of the damage which has resulted from, is resulting from and will continue to result from *the leaking of the tank*." (Amended Compl. ¶ 84 (emphasis added).) Accordingly, should the statute of limitations apply, Plaintiff may not bring [this claim].

Mem. Op. & Order, DN 83, p. 17. Plaintiff now argues that the KBC violations claim is separate and distinct from any claim relating to the leaking of the tank, as established by evidence and expert opinion gathered after the filing of the Amended Complaint.

Plaintiff's KBC violations claim centers around the fact that the tank was not built to withstand an earthquake, despite being built within a Calvert City earthquake zone. Because this is unrelated to the leaking and was not discovered until March of 2008, Plaintiff believes this claim survives. The Court notes, however, that both the leaking tank and the seismic deficiencies are essentially claims of professional negligence. Deviation from the Code constitutes malpractice on the part of the engineer. Whether the claim is labeled as one for professional negligence or as a violation of the Kentucky Building Codes is irrelevant in regard to the statute of limitations.

Plaintiff is correct in noting that in August of 2007, Plaintiff did not know of any seismic deficiencies. In August of 2007, however, Plaintiff did know that at least some negligence on the part of Defendants had occurred. Both the leaking and seismic deficiencies arise from the same negligence on the part of Dutchland's employees in designing the tank. In other words, the "gist of the entire action" is that Defendants designed a faulty tank, and Plaintiff was first made

16

aware of this issue on August 27, 2007.  *See Lashlee*, 570 F.2d at 109 (noting that the one year statute of limitations applied to all counts where "[t]he gist of the entire action is libel").  The fact that Plaintiff was unaware of the extent of the damage caused by Defendant's negligence, nor the exact parameters of the negligence, does not affect the application of the statute of limitations.  *See, e.g.*, *Estill County*, 84 F. App'x at 519.

   D. *Negligent Misrepresentation*

   Finally, Plaintiff argues that if section 413.245 applies, the negligent misrepresentation claims against Defendants Stoltzfus and Dutchland still survive.  Plaintiff urges the Court to adopt the reasoning of *Mid States Steel Products Co. v. Univ. of Ky.*, Nos. 2003-CA-002509-MR, 2003-CA-002694-MR, 2004-CA-001434-MR, 2006 WL 1195914, *12 (Ky. Ct. App. May 5, 2006).  *Mid States* found that section 413.245 did not apply to a claim of negligent misrepresentation.  The Court has already addressed this case in its prior opinion, however, and instead adopted the reasoning of *Van Eekeren Family, LLC v. Carter & Burgess, Inc.*, No. 4:07-CV-137-JHM, 2009 WL 541265, *3-4 (W.D. Ky. Mar. 4, 2009).  *Van Eekeren* held that a claim for negligent misrepresentation is barred by section 413.245 because it arises out of professional services, and section 413.245 was intended to encompass additional claims beyond those labeled "professional negligence" or "professional malpractice."  *See id.* at *4.

   Applying *Van Eekeren* to this case, the Court noted in its August 6, 2010, Memorandum Opinion and Order:

> Plaintiff's negligent misrepresentation claim alleges that ISP relied on oral and written representations by Defendants "regarding the design and construction of the Tank." (Amended Compl. ¶ 61.)  Further, "Defendants supplied false information regarding the design and construction of the Tank . . . ." (Amended Compl. ¶ 64.)  The design and construction of the tank are clearly issues generally handled by a professional engineer.  Moreover, the false information provided to

> Plaintiff is directly related to the design defects alleged in Plaintiff's negligence claims. The harm to Plaintiff is the same.

Mem. Op. & Order, DN 83, p. 16. Plaintiff has not presented any additional arguments that persuade the Court to amend its reasoning. Therefore, to the extent that section 413.245 applies, a claim for negligent misrepresentation is subject to the one year statute of limitations period.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is DENIED, and this case shall proceed in accordance with this Memorandum Opinion and the prior Memorandum Opinion addressing Defendants' Motion for Reconsideration.