# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:08-CV-153

ISP CHEMICALS LLC                                                              PLAINTIFF

v.

DUTCHLAND, INC., ET AL.                                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Dutchland, Inc.'s Motion to Exclude Testimony of Allyn Kilsheimer (Docket #168) and ISP Chemicals LLC's Motion to Exclude Testimony and Report of Steven Close (Docket #169). ISP has responded and replied (Docket #183, 189). Dutchland has responded and replied (Docket #177, 188). This matter is now ripe for adjudication.

## BACKGROUND

The parties and the Court are well aware of the facts of this case, which centers around the alleged negligent design and construction of an above ground, pre-cast waste water treatment tank at ISP's Calvert City facility. ISP filed the present lawsuit on September 22, 2008, asserting eight counts of relief against Defendants Dutchland, Inc., Erik Lederman, and Paul Stoltzfus. All claims against Defendant Erik Lederman have been dismissed. Four of ISP's remaining claims against Dutchland and Stoltzfus will proceed to trial: (1) negligence as to Stoltzfus; (2) negligent misrepresentation as to Stoltzfus; (3) vicarious liability as to Dutchland; and (4) contractual indemnity as to Dutchland. This matter is currently set for trial on July 25, 2011. The parties now seek to exclude the testimony of experts Allyn Kilsheimer and Steven Close.

## STANDARD

Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Rule 702 was amended in 2000 to address the Supreme Court's seminal opinion of *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993), and its progeny, including *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). *See* Fed. R. Evid. 702, Advisory Committee Notes.

"As a gatekeeper, the trial judge has discretion in determining whether a proposed expert's testimony is admissible based on whether the testimony is both relevant and reliable." *Rose v. Truck Centers, Inc.*, No. 09-3597, 2010 WL 3069613, at *4 (6th Cir. Aug. 6, 2010) (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007); *Daubert*, 509 U.S. at 589). The trial judge must assess "whether the reasoning of methodology underlying the testimony is scientifically valid and [ ] whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

## DISCUSSION

### I.     Allyn Kilsheimer

First, Dutchland seeks to exclude the testimony of ISP's structural engineering expert, Allyn Kilsheimer. According to Mr. Kilsheimer's CV, he is a registered professional structural engineer with over 49 years of experience. He has spent 40 of these years as founder and CEO of KCE Structural Engineers, PC. Dutchland does not dispute that Mr. Kilsheimer is qualified to

2

testify as an expert in the field of structural engineering.

Instead, Dutchland argues that Mr. Kilsheimer's testimony should be excluded because his expert opinion is unreliable. Dutchland argues that because Mr. Kilsheimer failed to perform any independent calculations or analysis, his opinion is not based on reliable principles and methods. In short, Dutchland asserts that Mr. Kilsheimer's general "experience" and "feeling for things" will not assist the jury. In contrast, ISP argues that Mr. Kilsheimer's comprehensive review of relevant documents, firsthand experience as a consultant in the tank repair process, and knowledge of accepted engineering principles and methods provide a reliable basis for his opinion. ISP also believes Dutchland's argument goes to the weight of Mr. Kilsheimer's testimony, not its admissibility.

On March 31, 2010, Mr. Kilsheimer submitted an eleven-page expert report. This report outlines the various materials he reviewed, a discussion of the history of the case, and several conclusions. These conclusions are stated as follows:

- a) Dutchland did not perform seismic analyses of the tanks in accordance with the required Kentucky Building Code or Contract Design-Build Bid Specifications.

- b) Dutchland did not analyze the tanks for sloshing forces induced by seismic loading.

- c) Dutchland did not take into account the 5" (or even 4") differential settlement they indicated their tank system could tolerate in the design of their tank system.

- d) Dutchland's calculations did not address loading conditions that considered individual tanks full with other tanks empty as was required by Contract, nor the possible differential settlement caused by that differential load through the mat to the soil subgrade.

- e) Dutchland further did not calculate the stresses induced between the 15 in. Thick mat under the wall and the 6 in. Thick area on either side.

>   f)   Dutchland did not perform engineering calculations to investigate differential rotational movements between the base slab and the wall segments.
>
>   g)   Dutchland's design was performed by an engineer who did not meet the Contract requirements.
>
>   h)   Non-engineers for Dutchland made critical engineering decisions that were inconsistent with the designs prepared by Dutchland after the fact.

Kilsheimer Report, DN 168-2, p. 11. Mr. Kilsheimer was also deposed on October 4, 2010. In his deposition, Mr. Kilsheimer acknowledged that he did not do any calculations. After opining that the walls of the Tank would have had problems due to wind and differential pressures, Mr. Kilsheimer noted:

>   A:   I think what I said earlier, based on my 52 years' experience, 42 in this practice, it's based on my experience. But you're right, we did not run the calculations.
>
>   . . .
>
>   Q:   But as I hear you, you – while you have identified deficiencies in the way the calculations were done on this tank, you don't really know for sure based upon actual calculations whether or not the – the structure, and specifically the – the wall panels, were strong enough or structurally sufficient to handle sloshing, filling and unfilling and wind loads other than a – just a very general feeling or belief based upon your experience in the field, right?
>
>   A:   We made no calculations and we saw no calculations performed by Dutchland, and therefore it's based solely on my experience. That's correct.

Kilsheimer Depo., DN 126-3, p. 65, 71. Mr. Kilsheimer noted that he was not provided sufficient information through discovery to make such calculations, although he also acknowledged that he did not ask for additional information.

The Sixth Circuit has examined Rule 702 and found that a proposed expert's opinion is

admissible, at the discretion of the trial court, if the opinion satisfies three requirements: "First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." *In re Scrap Metal Antitrust Litig.*, 527 F.3d, 517, 529 (6th Cir. 2008). The trial court is guided by Rule 702's general standards for assessing reliability: "whether the testimony is based upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case.'" *Id.*

The test of reliability, however, is a flexible one. *Id.* "A court must be sure not 'to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.'" *Id.* Reliability instead means "an expert's testimony . . . must be 'supported by appropriate validation –i.e., 'good grounds,' based on what is known." *Id.* (citing *Daubert*, 509 U.S. at 590). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* at 529-30.

The Court has reviewed Mr. Kilsheimer's report and testimony and finds that there appear to be two different types of opinions offered by Mr. Kilsheimer. First, as indicated in Mr. Kilsheimer's report, it is his opinion that Dutchland failed to perform necessary calculations and to take certain figures into account in preparing its design. Mr. Kilsheimer's other set of opinions, set forth more fully in his deposition testimony, express his belief that the Tank was not structurally sound (for a variety of reasons).

Mr. Kilsheimer's expert opinion as to the procedural aspects (the lack of calculations,

5

design elements, etc.) is properly based on his experience and review of the relevant documents. Mr. Kilsheimer cites to various codes and computer programs which are used within his field. He is well aware of the standards which apply to structural engineers, and these principles are reliably applied to the facts of the case. Thus, Mr. Kilsheimer's conclusions are helpful in assisting the jury in determining the duty owed by the defendants to ISP and whether that duty was breached.[1] Accordingly, the Court finds that Mr. Kilsheimer's expert testimony as to these matters is reliable.[2]

The Court is more troubled by Mr. Kilsheimer's opinions regarding the structural integrity of the Tank, i.e., his opinions as to causation and injury. It appears this is where Dutchland's concern also lies. Mr. Kilsheimer states that the Tank could not withstand certain elements or settlement, yet acknowledges he has not performed any calculations to test his beliefs. Instead, such beliefs are based only on his experience and observation of the Tank. Although Mr. Kilsheimer is very experienced and well-respected in his field, the lack of calculations or some other method to back up Mr. Kilsheimer's conclusions about the structural integrity of the Tank prevents the Court from assessing the reliability of Mr. Kilsheimer's opinion. Further, Mr. Kilsheimer's argument that he lacked sufficient information to make such calculations is rebutted by his own failure to request additional information and the fact that ISP's other experts were able to perform calculations based on the information available.

---

[1] To prevail on a claim of negligence in Kentucky, ISP must establish the primary elements: duty, breach, causation, and injury. *See Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682, 687 (Ky. 2003).

[2] The Court declines to rule on the relevance of these specific opinions at this time as this issue will be addressed more fully in the Court's ruling on Dutchland's Motion in Limine to Exclude Design Evidence.

Because Mr. Kilsheimer's opinions as to the structural integrity of the Tank are unreliable, his testimony on these matters shall be excluded. Any further questions from the parties regarding which portions of Mr. Kilsheimer's testimony are excluded will be addressed at trial.

Finally, ISP argues that Mr. Kilsheimer should also be permitted to testify as a lay witness. ISP notes that Mr. Kilsheimer was contacted by ISP prior to this litigation. He "participated as a consultant in the process of deciding on a repair method for the failed tank." ISP Resp., DN 183, p. 11. Because of his personal knowledge, ISP argues, Mr. Kilsheimer can testify as to communications between the parties and the decision to use a deep foundation piling system to repair the Tank. Dutchland asserts that Mr. Kilsheimer's testimony would be duplicative of ISP's other witnesses, and therefore, unnecessary. At this point in time, the Court has no knowledge of the testimony of ISP's other witnesses, so the Court cannot say that Mr. Kilsheimer's testimony would be duplicative. The Court will allow Mr. Kilsheimer to testify as a fact witness. The parties may discuss at trial whether a cautionary instruction regarding Mr. Kilsheimer's dual role as a fact and expert witness is necessary.

## II.     Steven Close

ISP seeks to exclude the testimony of Dutchland's expert Steven Close, a professional engineer licensed in eighteen states, Puerto Rico, and the U.S. Virgin Islands. Mr. Close works at Jorgensen & Close Associates, Inc., and "has nearly 40 years of experience designing pre-stressed concrete tanks, including the preparation of bid specifications, bidding, designing and completing jobs and investigating and rehabilitating distressed tanks." Dutchland Resp., DN 177, p. 1. ISP does not challenge Mr. Close's qualifications.

Instead, ISP argues that Mr. Close's opinions are not based on sufficient facts and data or

are improper subjects for expert testimony. ISP challenges Mr. Close's opinions on the differential settlement calculation provided by Stoltzfus, the meaning of the contract terms, and the decision to use a shallow foundation subgrade preparation as based on insufficient facts. ISP also argues that Mr. Close provides impermissible opinions as to legal conclusions and state of mind.

### A. *Insufficient Facts or Data*

As previously noted, Rule 702 requires an expert's testimony to be "based upon sufficient facts or data." Fed. R. Evid. 702. These facts need not be admissible at trial. *See* Fed. R. Evid. 703. An expert's opinion may not be based on unsupported speculation or conjecture. *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010). However, "a court must be sure not to 'exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.'" *In re Scrap Metal*, 527 F.3d at 529 (quoting Fed. R. Evid. 702 advisory committee's note, 2000 amend.).

First, ISP disputes Mr. Close's testimony regarding the various types of differential settlement. Mr. Close identifies five different types, and then gives his opinion as to what type of differential settlement each of the parties was thinking of at the time the calculations were provided. For instance, in his report, Mr. Close states that Dutchland "appears to have been thinking about" the tilt or dishing type of differential settlement, while ISP "appears to have been thinking about" the tilt type of differential settlement. Close Report, DN 139-10, p. 8. ISP argues that Mr. Close is not permitted to testify as to what type of differential settlement Stoltzfus or Lederman intended to provide because he never spoke with them about their calculations. In addition, ISP notes that expert testimony as to what Stoltzfus or Dutchland

8

meant in their communications about differential settlement is unnecessary because the parties themselves can offer this evidence.

Mr. Close is certainly permitted to testify as to the various types of differential settlement, as this knowledge will assist the jury in understanding the technical aspects of this case. Further, Mr. Close may discuss the fact that tilt is the most common type of differential settlement referenced in the construction of buildings. He may offer his opinions as to what type of differential settlement caused the Tank to fail. Finally, the Court believes that Mr. Close's opinions as to what the parties "appear to have been thinking" is permissible. Although Mr. Close's choice of language is not ideal, his statements express his expert opinion as to the actions taken in this case. These opinions have a sufficient factual basis in the prior testimony offered by the parties and in the emails and other documents that are part of this case. Although Stoltzfus may choose to testify as to the basis for his differential settlement calculation, he may not classify the types of differential settlement in the same way as Mr. Close, especially since he has not been trained as an engineer. Thus, the Court does not believe Mr. Close's testimony would be merely duplicative or unhelpful to the jury.

Next, ISP argues that Mr. Close's opinions as to the responsibilities of the parties under the contract must be excluded because Mr. Close has acknowledged that he only reviewed one provision of the contract. The Court agrees with ISP and believes that Mr. Close's testimony regarding the terms of the contract should be limited to the provision he read dealing with differential settlement (section 2.2.4). Mr. Close may offer his opinions as to which tasks each party undertook, but any statements indicating that such actions were required by the contract shall be excluded.

9

ISP also seeks to exclude Mr. Close's opinions that ISP should have originally used a deep foundation, piling support system for the Tank. This is the method that was ultimately used to repair the Tank. ISP seeks such an exclusion by arguing that Mr. Close's firm originally submitted a design bid recommending the a shallow slab on grade foundation for the Tank, and if he actually believed this design was inappropriate, he would not have recommended it. In other words, his original bid is inconsistent with his proffered expert testimony. Dutchland argues that the drawing for the potential bid was developed by another engineer at Mr. Close's firm. Further, Dutchland notes that there is no evidence that Mr. Close's firm had any knowledge of the site's soil condition. Finally, Dutchland argues that ISP had already decided to use a slab on grade foundation prior to accepting bids.

The Court finds that Mr. Close's opinions as to ISP's choice of foundation shall not be excluded. There is no evidence that Mr. Close had all of the relevant information (known to ISP) before him at the time his firm made its bid. It also appears from the bid specification that ISP had already decided to use a slab on grade foundation prior to inviting bids. ISP is free to challenge these assumptions and any alleged inconsistencies through cross examination.

   B.     *Impermissible Opinions*

ISP alleges that Mr. Close offers impermissible opinions in the form of legal conclusions and testimony regarding a party's state of mind. Specifically, ISP notes that Mr. Close's report "is filled with legal conclusions interpreting the terms of the contracts between Dutchland and ISP." ISP Reply, DN 189, p. 6. "[W]here a witness's testimony contains legal conclusions, it 'convey[s] the witness' unexpressed, and perhaps erroneous, legal standards to the jury.'" *Ferris v. TN Log Homes, Inc.*, No. 4:06CV-35-M, 2010 WL 996737, at *1 (W.D. Ky. Mar. 16, 2010);

*accord Fisher v. Halliburton*, Nos. H-05-1731, H-06-1971, H-06-1168, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009) ("[E]xperts cannot assert what law governs an issue or what the applicable law means because that is a function of the court."). Dutchland argues that Mr. Close does not make impermissible legal conclusions, but rather offers opinions on standard industry procedures and practices. *See Ferris*, 2010 WL 996737 at *2 (noting that an expert may testify as to whether a procedure complies with "common industry practice").

One portion of Mr. Close's report highlights the disagreement between the parties. On page four of his report, Mr. Close notes that "[i]t is readily apparent that ISP was requesting Dutchland's . . . estimate of this **Figure 5** tilt in their Bid Specification for the Project, section 2.2.4 when ISP requested the bidder to state 'the acceptable limits of differential settlement across the tank base.'" Close Report, DN 139-10, p. 4 (emphasis in original). ISP argues that this statement is an impermissible legal conclusion as to the meaning of section 2.2.4, while Dutchland argues that Mr. Close's opinion is merely offering his opinion as to what would be standard in the industry. The Court finds that the statement as written is impermissible in that it conclusively states what section 2.2.4 means. However, Mr. Close is free to offer his opinion for the jury as to what "across the tank base" means according to industry standards. The Court believes that careful questioning can serve to prevent Mr. Close from offering legal conclusions, but notes that Mr. Close should be especially careful to avoid stating the "responsibilities" of the parties pursuant to the contract. *See Ferris*, 2010 WL 996737 at *2. Any such statements as to the parties' responsibilities under, or requirements of, the contract will be excluded.[3] The Court

---

[3] Although not addressed by the parties, this holding shall apply equally to all experts, including Mr. Kilsheimer.

will address any further issues related to Mr. Close's "custom and usage" testimony at trial.

Finally, ISP argues that Mr. Close impermissibly opines as to the state of mind of the parties. Specifically, ISP argues that Mr. Close's expert report "contains unsupported speculations as to Dutchland or Stoltzfus' intent or state of mind, including his conclusion that Dutchland and Stoltzfus believed that they were providing a particular type of differential settlement, a type of differential settlement defined by Close after the fact." ISP Mot. to Exclude, DN 169-1, p. 8. The report also references what ISP "believed" and opines that ISP "lost confidence" in its subgrade preparation. *Id.*

The Court has already discussed Mr. Close's opinions as to Dutchland and Stoltzfus's beliefs relating to the type of differential settlement in this opinion. Although Mr. Close phrased these statements as "appears to have been thinking," his opinions are based on the factual information before him and are not truly "state of mind" opinions. Rather, they are Mr. Close's interpretations of the evidence based upon his expertise.

Mr. Close's opinions as to ISP's beliefs or "losing confidence" in its own soil preparation, however, shall be excluded. A party's "state of mind" is subjective and cannot be within Mr. Close's knowledge. *See Johnson v. Baker*, No. 1:08-CV-00038, 2009 WL 3486000, at *5 (W.D. Ky. Oct. 23, 2009). Mr. Close is free to testify as to the facts and circumstances surrounding ISP's decision to choose a different rehabilitation method, but there is no basis for asserting that ISP "lost confidence." This is speculation and clearly implies that ISP believed it was at fault for the Tank's problems. The jury should be left to draw these inferences on its own, and expert testimony along these lines would be unhelpful. *See Hershey v. Pacific Inv. Mgmt. Co. LLC*, 697 F. Supp. 2d 945, 949-50 (N.D. Ill. 2010) ("Permitting [the expert] to testify

regarding the state of mind of either PIMCO or the CBOT would effectively allow him to substitute his inferences for those that the trier of fact can and should draw on its own."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546-47 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."). Accordingly, the Court excludes these opinions.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Dutchland's Motion to Exclude Testimony of Allyn Kilsheimer is GRANTED IN PART and DENIED IN PART, and ISP's Motion to Exclude Testimony and Report of Steven Close is GRANTED IN PART and DENIED IN PART.