# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:08-CV-153

**ISP CHEMICALS LLC**                                                                                   **PLAINTIFF**

**v.**

**DUTCHLAND, INC., ET AL.**                                                                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Dutchland, Inc.'s Motion for Partial Summary Judgment on Contractual Indemnity (Docket #165). ISP has responded (Docket #184). Dutchland has replied (Docket #186). ISP has filed a sur-reply (Docket #207). This matter is now ripe for adjudication. For the following reasons, Dutchland's motion is DENIED.

## BACKGROUND

The parties and the Court are well aware of the facts of this case, which centers around the alleged negligent design and construction of an above ground, pre-cast waste water treatment tank at ISP's Calvert City facility. ISP filed the present lawsuit on September 22, 2008, asserting eight counts of relief against Defendants Dutchland, Inc., Erik Lederman, and Paul Stoltzfus. Throughout the course of this lawsuit, the parties have strenuously debated the application of the one year statute of limitations period for professional negligence claims set forth in Kentucky Revised Statutes section 413.245. On January 26, 2011, the Court held that ISP's professional negligence claims accrued on August 27, 2007. Because ISP did not file its lawsuit until September 22, 2008, the one year statute of limitations prevented ISP from bringing a claim for professional negligence against engineer Erik Lederman, who was dismissed from this action.

On March 1, 2011, the Court clarified the remaining issues in this case. The Court noted

that the contractual indemnity claim is not subject to the one year statute of limitations. Dutchland now seeks summary judgment on the contractual indemnity claim for reasons other than the statute of limitations.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

In its Amended Complaint, ISP argues that Dutchland agreed to indemnify and/or hold harmless ISP for any third-party claims or regulatory penalties. Specifically, the Complaint states:

> As a direct, proximate, and foreseeable consequence of Dutchland's performance, non-performance, or improper performance of its obligations under the Contract, **and/or** Dutchland's willful misconduct or misrepresentation, **and/or** Dutchland's breach of the Contract, **and/or** Dutchland's failure to comply with ISP's directions and instructions, ISP was damaged, and will be exposed to regulatory penalties and third-party claims.
>
> Dutchland is required to indemnify and/or to hold harmless ISP from any such penalties or claims.

Am. Compl., DN 29, ¶¶ 71-72 (emphasis in original). "Kentucky law provides that '[t]he nature of an indemnitor's liability under an indemnity contract shall be determined by the provisions of the indemnity agreement itself.'" *Thompson v. The Budd Co.*, 199 F.3d 799, 807 (6th Cir. 1999) (quoting *United States Fid. & Guar. Co. v. Napier Elec. & Constr. Co.*, 571 S.W.2d 644, 646 (Ky. Ct. App. 1978)). The contractual indemnity clause in this case provides:

> In consideration for being retained by ISP as an independent contractor hereunder, [Dutchland] agrees that [Dutchland] shall be liable for, and shall indemnify, defend and hold harmless the ISP Parties from and against any and all liabilities and damages and claims for damages, suits, proceedings, recoveries, judgments, executions, losses, costs, penalties, fines, consequences and expenses (including, but not limited to, litigation costs and expenses and reasonable attorneys' fees, as well as such costs, expenses and fees as may be incurred by any indemnitee in establishing and enforcing its right to indemnification hereunder) which may be made, had, brought or recovered against the ISP Parties or any of them by third parties (including, but not limited to, any Federal, State, county, municipal or local entity), [Dutchland] or [Dutchland's] employees, arising from or related to:
>
> (a) the performance, non-performance or improper performance of any of [Dutchland's] obligations arising from or related to this Contract by [Dutchland], its contractors, subcontractors and/or their respective officers, directors, employees or agents,

> (b) the willful misconduct or misrepresentation by [Dutchland], its contractors, subcontractors and/or their respective officers, directors, employees or agents,
>
> (c) any breach of this Contract by [Dutchland], its contractors, subcontractors and or their respective officers, directors, employees or agents,
>
> (d) the failure to comply with ISP's instructions or directions by [Dutchland], its contractors, subcontractors, and/or their respective officers, directors, employees or agents . . . .

Fixed Price Construction Contract, DN 165-2, p. 14-15. An additional clause within the contract provides as follows under the heading "Laws and Regulations":[1]

> Contractor shall, and shall cause its workers to, observe and comply with all Laws and Regulations. All Work performed by Contractor must be in accordance with such Laws and Regulations. Contractor shall be liable for, and **shall indemnify**, defend and hold harmless the ISP Parties from and against any and all liabilities and damages and claims for damages, suits, proceedings, recoveries, judgments, executions, losses, costs, penalties, fines, consequences and expenses (including, but not limited to, litigation costs and expenses and reasonable attorneys' fees, as well as such costs, expenses and fees as may be incurred by any indemnitee in establishing and enforcing its right to indemnification hereunder) arising from or related to any non-compliance with, or violations of, such Laws and Regulations.

*Id.* at 9 (emphasis added).

Dutchland argues that the indemnity provision limits Dutchland's duty to indemnify to those damages arising from third-party claims or regulatory penalties. Thus, because ISP has failed to identify damages stemming from third party liability, Dutchland believes it is entitled to summary judgment. In other words, ISP has failed to put forth enough evidence to establish a prima facie claim for contractual indemnity. In contrast, ISP argues that the indemnity

---

[1] Dutchland disputes the applicability of this clause because it was not referenced in Plaintiff's Amended Complaint. Because ISP attached the Fixed Price Construction Contract to the Amended Complaint in its entirety, however, it is considered part of the pleadings. *See* Fed. R. Civ. P. 10(c).

provisions in the contract are broad and Dutchland "not only agreed to indemnify ISP from all claims by third parties, but also from all costs, damages, expenses and fees related to or arising out of ISP's <u>potential</u> liability to third parties." ISP Resp., DN 184, p. 2 (emphasis in original). This includes those sanctions and penalties from state and federal regulatory agencies which ISP had to avoid by engaging in an expedient repair method for the Tank.[2] Accordingly, ISP argues, Dutchland is bound to indemnify ISP for these necessary repairs. "As a result of the expenses ISP incurred to repair the tank, including the cost of the installation of the piling foundation, ISP was able to meet its September 10, 2009 deadline and avoid sanctions and liability on claims from federal and state regulatory agencies." ISP Resp., DN 184, p. 4. This amount totals "at least $7,000,000 . . ." *Id.*

Prior to entering into a contract with Dutchland, ISP was required to construct a new waste water treatment tank system in order to remain in compliance with state and federal environmental regulations regarding air pollutants. *See, e.g.*, 40 C.F.R. § 63.2485. ISP was originally given a compliance deadline of November 2007. After ISP learned of the problems with the Tank, ISP sought and was granted an extension of this deadline to May 2008. ISP began to repair the Tank and obtained two more extensions of the compliance deadline, through September 10, 2009. Because ISP was able to meet this deadline, it avoided liability and sanctions for not complying with federal and state regulations.

Neither party disputes that there are no third party claims against ISP at this time.

---

[2]According to a letter sent to Dutchland on January 31, 2008, by ISP's vice president of engineering, Dan Andrews, "[i]f ISP does not achieve compliance by that deadline, significant fines and penalties may be imposed of over $25,000 per day of non-compliance . . . ." Jan. 31, 2008, Letter, DN 207-1, p. 2.

Instead, ISP argues that Dutchland is also obligated to indemnify ISP for any potential third party claims or liabilities, or avoidance of those liabilities. This would include ISP's costs to repair the Tank so that it would be in compliance with federal and state regulations. "[P]arties may contractually provide for indemnification for - among other things - the costs incident to potential legal liability as well as for the legal liability itself." *Thompson v. The Budd Co.*, 199 F.3d 799, 807 (6th Cir. 1999) (citing *United States Fid. & Guar. Co. v. Napier Elec. & Const. Co.*, 571 S.W.2d 644, 646 (Ky. Ct. App. 1978)). The broad contract language here appears to encompass potential claims and does not require proof of a third-party judgment against ISP.

Dutchland states that it does not question the breadth of the contractual indemnity provision (Section 15), but rather "ISP's complete failure to document damages flowing from that provision." Dutchland Reply, DN 186, p. 2. ISP cites repeatedly to an Agreed Order entered into by ISP and the Energy and Environment Cabinet of the Commonwealth of Kentucky, which was filed on May 6, 2009, with the Office of Administrative Hearings. *See* Agreed Order, DN 184-3, p. 2. Yet Dutchland asserts that ISP never produced this document until May 31, 2011, despite ISP's obligations under Rule 26. Thus, Dutchland asserts it had no way of knowing that the extensions of time granted for ISP's regulatory compliance deadline (which Dan Andrews, ISP's Vice President of Engineering, testified to on March 24, 2009) were linked to concrete third-party damages. Moreover, ISP's claimed damages under its indemnity claim are essentially the same damages sought under its negligence and breach of contract claims, but ISP's disclosures have failed to distinguish such that Dutchland had notice of ISP's claimed indemnity damages. Because of ISP's late disclosure, Dutchland asks the Court to exclude evidence of third-party damages at trial.

ISP asserts that it has provided Dutchland with information relating to indemnity damages throughout the course of this litigation. Specifically, ISP argues that the Complaint, Dan Andrews's deposition testimony, and previously produced correspondence provided notice of ISP's indemnity damages to Dutchland in a timely manner. The Complaint seeks recovery of "all damages suffered by reason of regulatory penalties or third-party claims . . . ." Am. Compl., DN 29, p. 13. Dan Andrews testified as to the necessity of the more expensive repair option in order to avoid being in further violation of environmental permits. He detailed the requested extensions and the time frames of the repair options available to ISP. The correspondence previously provided to Dutchland includes a January 31, 2008, letter from Dan Andrews to Dutchland indicating that ISP would be subject to $25,000 fines per day if it was not in compliance by its agreed upon deadline. In addition, a January 15, 2008, letter from the Division of Air Quality to ISP's Environmental Compliance Director notes that ISP's request for a six-month compliance extension was granted.

In response to Dutchland's argument that the May 6, 2009 Agreed Order was not timely disclosed, ISP argues that it is public record, was never requested by any of Dutchland's discovery requests, and ISP did not have a duty to supplement its initial disclosures to include the Agreed Order. Because the Agreed Order was not entered until May 6, 2009, it could not have been disclosed as part of ISP's initial disclosures. A party is required to supplement its disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1)(A). ISP notes that it did not supplement its disclosures because it never intended to use

the Agreed Order to support its indemnification claim. Instead, "ISP only used the Agreed Order to reiterate what the allegations, documentary evidence and testimony had previously shown . . . ." ISP Sur-Reply, DN 207, p. 7.

The Court finds that the Agreed Order is public record and was available to both parties. "[D]iscovery need not be required of documents of public record which are equally accessible to all parties." *Sec. & Exch. Comm'n v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 995 (S.D.N.Y. 1973); *Nurse Notes, Inc. v. Allstate Ins. Co.*, No. 10-CV-14481, 2011 WL 2015348, at *2 (E.D. Mich. May 24, 2011). "This observation is consistent with the federal rule governing the production of documents and things, Fed. R. Civ. P. 34, which permits a party to request from another party, limited to those documents and things 'which are in the possession, custody, or control of the party upon whom the request is served.'" *Krause v. Buffalo & Erie Cnty. Workforce Dev. Consortium, Inc.*, 425 F. Supp. 2d 352, 375 (W.D.N.Y. 2006) (quoting Fed. R. Civ. P. 34(a)(1)). As ISP points out in its sur-reply, Dutchland knew of ISP's proceeding with the Kentucky Department of Environmental Protection and could have requested copies of the documents filed in ISP's case. Although ISP certainly had more knowledge of the proceeding and the Agreed Order was undoubtedly already in ISP's possession, this is not a case where the burden on Dutchland to obtain the Agreed Order was too onerous. *Contra RTC Mortg. Trust 1994-S3 by Trotter Kent, Inc. v. Guadalupe Plaza*, 918 F. Supp. 1441, 1450-51 (D.N.M. 1996); *Snowden v. Connaught Labs., Inc.*, 137 F.R.D. 325, 333 (D. Kan. 1991). Accordingly, the Agreed Order will not be excluded.

The Court must also determine whether ISP has set forth a proper claim for indemnity by claiming damages arising from or related to the third-party claims and regulatory penalties.

8

ISP's initial disclosures state that "ISP suffered losses and incurred liability in an amount exceeding $8,635,000 by reason of Defendants' acts and/or omissions, including $648,000 for engineering and consulting costs, $6,663,000 in capital repair costs, and $800,000 for increased operating costs." ISP Init. Disc., DN 165-3, p. 7. ISP also set forth its damages in a "Final Project Costs" sheet which itemized such things as the costs for outside consultants, engineering, civil work, seismic repairs, and more. *See* DN 184-4, p. 2. ISP explained these costs in more detail in its answer to Dutchland's interrogatories. Nowhere does ISP identify which damages are claimed for indemnity versus negligence versus breach of contract, etc.

Federal Rule of Civil Procedure 26 provides that "a party must, without awaiting a discovery request, provide to the other parties: . . . (iii) a computation of each category of damages claimed by the disclosing party . . . ." Fed. R. Civ. P. 26(a)(1)(A). In its Amended Complaint, ISP's request for relief sought damages in several different categories, including money damages, punitive damages, an award of indemnity, attorney's fees, and specific performance. ISP's request for an award of indemnity seeks

> an award of indemnity for all damages for which Dutchland is liable under the Contract, including, without limitation, all repair costs and costs to complete Dutchland's scope of work, all damages suffered by reason of regulatory penalties or third-party claims, business interruption losses and all costs and expenses, including attorneys' fees, incurred litigating this action . . . .

Am. Compl., DN 29, p. 13. This portion of the Amended Complaint clearly identifies repair costs as potential indemnity damages. ISP has submitted documentation to Dutchland outlining the repair costs associated with this case. Thus, the Court believes that ISP has satisfied its burden and there is a genuine issue of material fact as to whether Dutchland is liable for indemnity damages.

9

As a final matter, however, the Court notes that the issue of indemnity in this case should not focus on whether ISP would have incurred liability by failing to comply with environmental regulations, as ISP was already exposed to this liability prior to entering into an agreement with Dutchland.  Rather, the issue is: What liability (or potential liability) was ISP exposed to by not complying with environmental regulations *within the deadlines* set by federal and state regulatory agencies, assuming this delay was caused by Dutchland?  ISP argues that it had to use a faster repair method to fix the Tank rather than start from scratch.  In addition, ISP incurred costs and attorney's fees in seeking extensions of compliance deadlines.  But the delay that is allegedly attributable to Dutchland's actions does not necessarily encompass the cost of all repairs.  Rather, ISP's indemnity damages should look to the difference between the cost of repairing the Tank within the deadlines (and the cost of obtaining extensions) versus the cost of repairing the Tank had there been no compliance deadlines.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Dutchland's Motion for Partial Summary Judgment on Contractual Indemnity is DENIED.