UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:08-CV-153

**ISP CHEMICALS LLC**                                                                                    **PLAINTIFF**

**v.**

**DUTCHLAND, INC., ET AL.**                                                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Dutchland, Inc.'s Motion for Partial Summary Judgment on Breach of Warranty (Docket #162), Dutchland, Inc. and Paul Stoltzfus's Motion for Summary Judgment on Claims Against and Related to Paul Stoltzfus (Docket #164), ISP's Cross-Motion for Summary Judgment on Dutchland's Statute of Limitations Defense (Docket #171), and Dutchland's Motion to Bifurcate (Docket #166). ISP has responded and replied (Docket #170, 181, 182, 190). Dutchland has responded and replied (Docket #178, 187, 191). This matter is now ripe for adjudication.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the

case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

The parties and the Court are well aware of the facts of this case, which centers around the alleged negligent design and construction of an above ground, pre-cast waste water treatment tank at ISP's Calvert City facility. ISP filed the present lawsuit on September 22, 2008, asserting eight counts of relief against Defendants Dutchland, Inc., Erik Lederman, and Paul Stoltzfus. Throughout the course of this lawsuit, the parties have strenuously debated the application of the one year statute of limitations period for professional negligence claims set forth in Kentucky Revised Statutes section 413.245. On January 26, 2011, the Court held that ISP's professional negligence claims accrued on August 27, 2007. Because ISP did not file its lawsuit until September 22, 2008, the one year statute of limitations prevents ISP from bringing a claim for professional negligence against engineer Erik Lederman, who was dismissed from this action.

On March 1, 2011, the Court clarified the remaining issues in this case. First, the Court noted that the contractual indemnity claim is not subject to the one year statute of limitations. In

addition, in order for the one year statute of limitations period to apply to non-engineer Paul Stoltzfus, Dutchland must establish either that a licensed engineer had oversight of his work or delegated work to him for completion. Next, the Court noted that for the statute of limitations period to apply to Dutchland, it must be shown that the firm had at least one professional engineer on staff and the firm must hold itself out as an engineering firm. If the statute of limitations applies to Dutchland, the breach of warranty claim is barred. The motions currently before the Court address whether the one year statute of limitations period set forth in Kentucky Revised Statutes section 413.245 applies to Dutchland and non-engineer Paul Stoltzfus. Before delving into these issues, the Court believes a summary of the procedural history and the Court's rulings up to this point is necessary.

**I.     The Complaint**

ISP filed its Complaint in this Court on September 22, 2008, against Defendants Dutchland, Erik Lederman, and Paul Stoltzfus. ISP filed its First Amended Complaint on March 27, 2009, which asserts eight counts for relief:

I.      Breach of Contract (as to Dutchland)

II.     Negligence (as to all Defendants)

III.    Professional Negligence (as to all Defendants)

IV.     Negligent Misrepresentation (as to all Defendants)

V.      Contractual Indemnity (as to Dutchland)

VI.     Specific Performance (as to Dutchland)

VII.    Violation of Kentucky Building Code (as to all Defendants)

VIII.   Negligence Per Se (as to all Defendants)

Am. Compl., DN 29, p. 6-12. ISP seeks monetary damages in excess of $75,000, punitive damages, an award of indemnity, interest, costs, and attorney's fees. ISP attached to its pleading the Fixed Price Construction Contract entered into on October 12, 2005, by ISP and Dutchland.

## II.     Defendants' Motion for Summary Judgment

On March 5, 2010, Defendants filed a motion for summary judgment, arguing that the one year statute of limitations period for professional negligence claims barred ISP from bringing its lawsuit. The statute of limitations period is contained in Kentucky Revised Statutes section 413.245, and notes that

> a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for other shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured.

Ky. Rev. Stat. Ann. § 413.245. "Professional services" are defined as "any service rendered in a profession required to be licensed, administered and regulated as professions in the Commonwealth of Kentucky . . . ." Ky. Rev. Stat. Ann. § 413.243.

The Court issued its Memorandum Opinion and Order on August 6, 2010. In that opinion, the Court noted that Kentucky case law acknowledged engineering as a "professional service," and the application of section 413.245 "is dependent on the 'status of the person performing the activity.'" Mem. Op. & Order, Aug. 6, 2010, DN 83, p. 4. Relying on the Kentucky statutes regulating the licensing of engineering professionals, the Court held that during the time Lederman was not licensed in Kentucky, he could not take advantage of the one year statute of limitations. Therefore, because Lederman did not become licensed in Kentucky until May of 2006, "any work prior to that date does not receive the protection of section

4

413.245." *Id.* at 9. The Court went on to discuss, in dicta, when ISP's claims accrued. The Court found that, at the time ISP observed leakage from the Tank on August 27, 2007, ISP knew, or reasonably should have known, of its negligence and professional negligence causes of action. The Court also held that the one year statute of limitations period would be applicable to ISP's claims for breach of contract/breach of warranty, negligent misrepresentation, violations of the Kentucky Building Code, and negligence per se. The Court declined to address ISP's contractual indemnity and specific performance claims.

Defendants' motion for summary judgment was denied because there was a genuine issue of material fact as to "whether the work done or supervised by Lederman prior to or after his Kentucky licensure was the cause of Plaintiff's claims, and whether the one year statute of limitations applies." *Id.* at 10.

### III. Motion for Reconsideration

Defendants filed a motion for reconsideration on August 20, 2010. Defendants urged the Court to reconsider its ruling that section 413.245 does not apply to professional engineers who are not licensed within the Commonwealth of Kentucky. The Court granted Defendants' motion on October 21, 2010, holding

> Upon further consideration of the issue . . . the Court finds that the Kentucky legislature and the Kentucky Supreme Court must have intended for section 413.245 to apply to all engineers, not just those licensed in the Commonwealth of Kentucky. Defendants' motion caused the Court to revisit the issues on all fronts, and the Court concedes that its initial ruling was too narrow. In light of the Court's additional research and consideration, the Court adopts Defendants' position.

Mem. Op. & Order, Oct. 21, 2010, DN 127, p. 4-5. The Court noted that inclusion of the licensure provision in the definition of "professional services" was intended by the legislature

only to help identify those professions which are entitled to protection under section 413.245. "Accordingly, section 413.245 applies to all engineers, not just those licensed by the state of Kentucky." *Id.* at 6.

The Court then directed the parties to brief three remaining issues: (1) whether section 413.245 also applies to work by non-engineer, Paul Stoltzfus; (2) whether section 413.245 applies to Dutchland as a business entity; and (3) whether any of ISP's claims are not subject to section 413.245 because they are unrelated to the engineering design of the Tank.

## IV. Additional Briefing

The parties completed their additional briefing on December 10, 2010. The Court issued its Memorandum Opinion and Order regarding these briefs on January 26, 2011. The Court held that in order for section 413.245 to apply to the work of non-engineers (like Stoltzfus) "a licensed engineer must have some oversight over a non-engineer's work in order for such work to be covered by section 413.245. This may include the delegation of work to a non-engineer . . . ." Mem. Op. & Order, Jan. 26, 2011, DN 144, p. 6. In addition, the Court noted that section 413.245 applies to a corporate entity if the engineering firm has a professional engineer on staff and holds itself out as an engineering firm.

The Court reaffirmed its holding that the date of accrual was August 27, 2007, and then addressed ISP's remaining claims. Specifically, the Court held that the breach of warranty claim is subject to the statute of limitations because it "is founded upon the same injury underlying the professional negligence claim." *Id.* at 13. Further, the Court determined, to the extent it is applicable, the statute of limitations applies to Kentucky Building Code violations or negligent misrepresentation claims, but not to ISP's indemnity claim.

## V. Joint Report and Order

After the Court's Memorandum Opinion and Order regarding the additional briefing was filed, the parties requested further clarification. The Court instructed the parties to file a joint report outlining their concerns. The parties filed this report on February 10, 2011, and the Court issued its Order on March 1, 2011. The parties expressed disagreement over the proper standards to apply and the survival of certain claims. The Court held that the test for determining if section 413.245 applies to the work of a non-engineer is whether a licensed engineer had oversight of the non-engineer's work and/or delegated such work to the non-engineer. In contrast, the Court held that for section 413.245 to apply to Dutchland, Dutchland has to satisfy both prongs of the Court's two-part test. The Court also held that "if the statute of limitations does not apply to Dutchland, the breach of warranty claim survives in its entirety. If the statute of limitations applies to Dutchland, the breach of warranty claim is barred." Order, Mar. 1, 2011, DN 154, p. 2-3. Finally, the Court noted that all claims against Lederman were barred, but surmised that Dutchland could still be vicariously liable.

## VI. Current Status of the Case

Numerous motions and briefs have been filed in this case, which is currently set for trial on July 25, 2011. The parties recently filed several additional motions dealing with the remaining statute of limitations issues. Some of these briefs raise arguments that have been addressed in previous briefings and opinions. This is understandable, as the issues in this case are complex and there is very little case law on the subject. Part of the confusion in this case appears to stem from the Court's failure to address the sustainability of ISP's claims at each step throughout this statute of limitations conundrum. Accordingly, the Court now attempts to

7

outline the current status of ISP's claims.

*A.   Breach of Contract and Specific Performance*

ISP seeks recovery from Dutchland on its breach of contract claim. ISP has alleged that Dutchland breached its duties under the contract by failing to (a) prepare sufficient design documents for the construction of the Tank, (b) properly construct the Tank, (c) properly supervise construction of the Tank, (d) properly correct deficiencies in the design and construction of the Tank, and (e) honor express and implied warranties. Am. Compl., Dn 29, ¶ 43. The breach of contract claims stem from the alleged negligence of Lederman as the engineer in charge of design and construction of the Tank, and are thus barred by the statute of limitations. *See Matherly Land Surveying, Inc. v. Gardiner Park Dev., LLC*, 230 S.W.3d 586, 590 (Ky. 2007) ("Since the breach of contract claim stems from the performance or lack of performance of professional services, the proper statute of limitations is KRS 413.245.").

The more difficult issue is determining whether ISP's breach of warranty claim is also barred. In its January 26, 2011, ruling, the Court held that section 413.245 applies to the breach of warranty claim. The parties' Joint Report filed thereafter noted that ISP believed the breach of warranty claim survives "to the extent such claims are based upon Stoltzfus' representations to ISP to prepare the subsurface soil of the tank to withstand a differential settlement of 4 inches or Stoltzfus' failure to communicate those representations internally to the proper personnel at Dutchland." Joint Report, Feb. 10, 2011, DN 149, p. 3. Dutchland disagreed, arguing that the warranty claim was dismissed. The Court's response to the Joint Report merely indicated, "if the statute of limitations does not apply to Dutchland, the breach of warranty claim survives in its entirety. If the statute of limitations applies to Dutchland, the breach of warranty claim is

barred." Order, Mar. 1, 2011, DN 154, p. 2-3.

After further consideration, the Court now believes this holding was in error. The Court has already held that the breach of warranty claim is subject to the one year statute of limitations because it related to professional services and is founded upon the same underlying injury as ISP's professional negligence claims. In other words, the alleged negligence in this case resulted in a leaking Tank, and the breach of warranty claim stems from Dutchland's alleged failure to correct these defects. As noted in the Court's January 26, 2011, opinion, ISP's breach of warranty claim differs from similar warranty claims brought in other cases because here the breach of contract and breach of warranty claims stemmed from the same actions and had the same result. Dutchland allegedly never delivered a working Tank for ISP's use and it appears there was no final acceptance on the part of ISP. Thus, ISP's breach of contract and breach of warranty claims are essentially one and the same. Because the Court has determined that ISP's breach of contract claims are barred, so too must ISP's breach of warranty claim be barred by the one year statute of limitations.

  B. *Negligence and Professional Negligence*

    1. Lederman

ISP's negligence claims against Lederman have been dismissed because the one year statute of limitations applies to Lederman's professional services, and the present lawsuit was not filed within one year of the discovery date of August 27, 2007.

    2. Stoltzfus

Stoltzfus may still be held liable for his alleged negligence in calculating the 4" differential settlement figure so long as the one year statute of limitations does not apply to his

actions. The Court has not yet determined whether section 413.245 applies to this claim, but this issue is currently pending before the Court.

   3. Dutchland

ISP's negligence claim against Dutchland is, in effect, a claim of vicarious liability or respondeat superior. Because ISP cannot recover under a negligence theory from Lederman because the filing of the Complaint was untimely, ISP is also prevented from recovering under a vicarious liability theory against Dutchland. This matter is discussed in more detail in the Court's Memorandum Opinion and Order ruling on Dutchland's motion for partial summary judgment on vicarious liability claims, filed contemporaneously. ISP's vicarious liability claim as to Stoltzfus's actions, however, survives if the negligence claim against Stoltzfus is not subject to the one year statute of limitations.

  C. *Negligent Misrepresentation*

   1. Lederman

The Court's rulings adopted the reasoning of *Van Eekeren Family, LLC v. Carter & Burgess, Inc.*, No. 4:07-CV-137-JHM, 2009 WL 541265, at *3-4 (W.D. Ky. Mar. 4, 2009), in holding that section 413.245 applies to ISP's claims of negligent misrepresentation because it arises out of professional services, and section 413.245 was intended to encompass claims beyond merely "professional negligence" or "professional malpractice." Because section 413.245 applies to the professional negligence of Lederman, ISP's claim of negligent misrepresentation is also barred.

   2. Stoltzfus

Similar to ISP's negligence claims against Stoltzfus, the Court has not yet determined if

section 413.245 applies to Stoltzfus's act of calculating the 4" differential settlement figure.

        3.      Dutchland

Again, this claim against Dutchland is one for vicarious liability. Any vicarious liability as to Lederman is barred, but Dutchland may be held liable for Stoltzfus's actions if the Court determines section 413.245 does not apply.

      D.      *Contractual Indemnity*

In its January 26, 2011, Memorandum Opinion and Order, this Court determined that section 413.245 does not apply to ISP's claim for contractual indemnity. The parties agreed to this in their Joint Report. Dutchland has filed a separate motion for partial summary judgment on the contractual indemnity claim.

      E.      *Kentucky Building Code Violations and Negligence Per Se*

The parties agreed in their Joint Report that these claims are time-barred by Kentucky Revised Statutes section 198B.130. These claims were dismissed with prejudice in the Court's March 1, 2011, Order.

## VII.   Motions for Partial Summary Judgment

Currently before the Court are three motions for partial summary judgment related to whether the statute of limitations applies to the remaining claims against Dutchland and Stoltzfus. Defendants seek an order of summary judgment on the breach of warranty claim against Dutchland and all claims against Paul Stoltzfus. ISP seeks an order of summary judgment declaring that Dutchland's statute of limitations defense does not apply to either Dutchland or Stoltzfus.

      A.      *Application of Section 413.245 to Dutchland*

In its March 1, 2011, Order, the Court clarified its holding regarding application of the one year statute of limitations period set forth in section 413.245 to Dutchland. Specifically, the Court noted:

> The parties disagree as to what must be shown to prove that the statute of limitations applies to Dutchland. The Court's prior opinion states that "the firm must at least have a professional engineer on staff. . . . In addition, the firm must hold itself out as an engineering firm." DN 144, p. 8-9. Although the following paragraph uses the term "or," use of this conjunction was not intended to be interpreted as an "either/or" situation. Accordingly, ISP's proposed language is correct.

Order, March 1, 2011, DN 154, p. 2. ISP's proposed language stated: "A threshold question of fact exists as to whether, under the standards set forth in Matherly, 230 S.W.3d at 590, 1) Dutchland, at all times, employed an engineer to oversee the project **and** 2) held itself out as an engineering firm." Joint Report, DN 149, p. 2 (citing *Matherly Land Surveying, Inc. v. Gardiner Park Dev., LLC*, 230 S.W.3d 586, 589-90 (Ky. 2007)). The Court held that this standard was to determine whether ISP could proceed on its breach of warranty claim.

Because of the Court's holding on the breach of warranty claim set forth earlier in this Opinion, this line of inquiry is no longer necessary. The breach of warranty claim should have been dismissed at the time the Court determined it was the same as the breach of contract claim in regard to the application of the statute of limitations.

    B.    *Application of Section 413.245 to Stoltzfus*

The Court's March 1, 2011, Order adopted Dutchland's proposed language as to the appropriate standard for determining whether section 413.245 applies to the work of non-engineer Paul Stoltzfus. Dutchland's language stated: "A threshold question of fact exists as to 'whether a licensed engineer had oversight of Stoltzfus's work, or delegated such work to him

12

for completion.'" Joint Report, DN 149, p. 2 (quoting Mem. Op. & Order, Jan. 26, 2011, DN 144, p. 6.) Thus, Dutchland need only prove one of the two alternatives.

In *Matherly*, the Kentucky Supreme Court noted that although land surveying has "not been expressly declared a professional service under KRS 413.245," the one year statute of limitations for professional services could apply if a professional engineer had oversight of the land surveying work. 230 S.W.3d at 589-90. The court also noted the existence of "substantial evidence that the construction documents . . . were to be approved by [an engineer]" in holding that the services performed by Matherly Land Surveying, Inc., were subject to section 413.245. *Id.* at 590.

The *Matherly* court also cited to *Lapham v. Stewart*, 51 P.3d 396, 403 (Id. 2002), in its analysis. *Id.* In *Lapham*, an attorney was hired to provide professional services in connection with a real estate loan. 51 P.3d at 403. The plaintiff alleged that the attorney's secretary was negligent in disbursing loan funds without the plaintiff's prior approval. *Id.* at 399, 403. Specifically, the secretary's actions included drafting a promissory note and deed of trust using the attorney's forms, attending the closing in the attorney's place, receiving funds for deposit into the attorney's trust account, and disbursing such funds the next day. *Id.* at 399. The Idaho Supreme Court held that because the attorney had delegated certain responsibilities to his secretary, the plaintiff's action against the secretary for negligence was also barred by Idaho's professional services statute of limitations. *Id.* at 403.

The application of the statute of limitations in this case thus depends on whether a licensed engineer had oversight of Stoltzfus's calculation of the 4" differential settlement figure or delegated such a task to him. Although Paul Stoltzfus was the manager of Dutchland's design

13

department, he was not a licensed engineer. ISP alleges that Stoltzfus was negligent in his calculation of a 4" differential settlement figure, and that he should be held liable for his negligence. Further, ISP alleges that Dutchland should be held vicariously liable.

Under ISP's design/build bid specification, the contractor who received the bid was "requested to state the acceptable limits of differential settlement across the tank base" to "assist ISP in proper design and planning of the site surcharge and prep." Design/Build Bid Spec., DN 63-6, p. 10. A differential settlement calculation is necessary to determine how much movement a structure can take without jeopardizing the structure such that it begins cracking from the movement. Stoltzfus based his differential settlement calculation on what had been used for past structures of a similar size, the ACI design manual, and reports from the soil preparation company. Stoltzfus's final calculation totaled four to five inches for differential settlement and a 4" differential settlement figure was submitted through the sales and estimating department to ISP for preparation of the soil beneath the Tank. This calculation was provided to ISP in December of 2005.

Two engineers worked for Dutchland during the relevant time period: Erik Lederman and Gary Tshudy. Gary Tshudy was a licensed engineer (although he was not licensed in Kentucky) who worked for Dutchland from April 2004 to June of 2005. After leaving his full-time position with Dutchland, Tshudy continued to work part-time as he finished up the projects he was working on. In fact, Tshudy was on Dutchland's payroll until May of 2006. Erik Lederman was hired as Tshudy's replacement and began working for Dutchland on September 15, 2005. Lederman left Dutchland in early 2008. As manager of Dutchland's design department, Stoltzfus served as both Tshudy and Lederman's supervisor.

14

Dutchland and ISP began initial conversations about the Calvert City project in February of 2005. Estimators and draftsmen handled the preliminary work during the estimating (or "EST") phase. Dutchland issued a final contract proposal on October 10, 2005, and received the contract two days later. At this point, the project entered the design (or "DES") phase, and Lederman was the Engineer of Record. During the DES phase, the Engineer of Record was responsible for reviewing the draftsmen's preliminary drawing and calculations and making changes. As noted previously, Stoltzfus provided his differential settlement calculation to ISP in December of 2005. Payroll records indicate that Lederman worked on the Calvert City project in March, April, and May of 2006. Lederman was responsible for finalizing and sealing the design plans. Following Lederman's approval, Dutchland commenced construction. Construction on the Tank was completed in June of 2007.

According to Stoltzfus's deposition, Lederman only became involved when it was time to do a final design on the structure and to provide calculations to back up the design. Lederman's testimony indicates that he did not work on the Calvert City project until the first quarter of 2006. Stoltzfus testified that he did not consult with an engineer when calculating the 4" differential settlement figure, or before providing it to ISP. These facts are undisputed. There is no overt action in this case through which Tshudy or Lederman delegated the differential settlement calculation to Stoltzfus. In addition, there is no evidence that either Lederman or Tshudy had explicit oversight over Stoltzfus's calculation.

Instead, Dutchland argues that there was implicit oversight because Lederman was the Engineer of Record and thus had the "ultimate responsibility" for all design aspects of the Calvert City project. Dutchland notes that the company's procedures for bidding and designing

15

were set up so that the draftsmen and estimators could do the preliminary work while an engineer was always available for consultation and had to approve the final plans. Dutchland asserts that "[j]ust because an employee exceeds the scope of their delegation or makes a mistake does not mean that they were not supervised or that their work should have been inspected by the supervisor." Dutchland Mot., DN 164-1, p. 16.

In this case, a licensed engineer did not oversee Stoltzfus's calculation of the 4" differential settlement figure. There is no evidence that Stoltzfus consulted with an engineer while preparing the calculation or before communicating it to ISP. This is despite the fact that the project had proceeded to the DES phase such that an engineer should have been involved. Both engineers deny involvement in, or even knowledge of, Stoltzfus's calculation. In addition, even if the Court were to adopt Dutchland's "Engineer of Record" standard, there is no evidence that Lederman was ever made aware of Stoltzfus's calculation. How then could Lederman have evaluated or changed such a calculation during his approval of the final plans if he had no knowledge of it? Thus, even an implicit oversight argument fails.

Finally, there was also no implicit delegation in this case. Despite Dutchland's arguments that this case is similar to *Lapham*, the Court believes the two cases are distinguishable. In *Lapham*, the attorney was hired by the client and had ultimate responsibility for the case. The court in *Lapham* held that the attorney delegated various tasks to his secretary. Whether delegation was explicit in that case or not, at some point the attorney must have conveyed instructions to his secretary. The attorney must have been aware of his secretary's actions. Here, however, Dutchland had ultimate responsibility for the project. There is no evidence that the policies in place for the bid/design processes were implemented or directed by

16

one of the two engineers on staff. In addition, Lederman acknowledges that he had no knowledge that Stoltzfus made a differential settlement calculation. In fact, Lederman didn't know of the calculation until after construction had commenced. He admits that Stoltzfus's calculation "wasn't communicated to me." *See* Lederman Depo., DN 68-14, p. 50.

To be fair, the Court recognizes the danger of piecemeal litigation against individual employees working on a large project which is considered "professional services." The Court believes most cases, however, would involve lower-level employees acting under a professional. These employees would likely receive protection, as the secretary did in *Lapham*.[1] In contrast, this case involves a supervisor to whom the engineers reported who took it upon himself to make a critical calculation without any delegation or oversight. Moreover, the bigger danger here is allowing companies like Dutchland to use the "professional services" statute of limitations as a shield against liability merely because they have an engineer on staff, even if the engineer has virtually no involvement in crucial elements of a project. For these reasons, summary judgment on the statute of limitations issue as to Stoltzfus is granted in favor of ISP.

**VIII. Motion to Bifurcate**

Dutchland's motion to bifurcate seeks to bifurcate the trial so that the threshold questions as to whether the statute of limitations applies to Stoltzfus and Dutchland are decided before the parties engage in a lengthy trial. Because the Court has ruled on the motions for partial summary

---

[1] For instance, Dutchland argues that it is absurd for ISP to focus only on Stoltzfus's actions and not the work of the draftsmen. The Court believes, however, that the draftsmen would have received the protection of section 413.245 for their work. The draftsmen's work, in the form of drawings, was delivered to Lederman upon his arrival at Dutchland. Accordingly, there was implicit oversight of their work as Lederman's approval was required. In contrast, Stoltzfus's calculation was never communicated to Lederman or submitted for his approval.

judgment and no issues of material fact remain, bifurcation as to these issues is no longer necessary. Accordingly, Dutchland's motion is moot.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1) Dutchland's Motion for Partial Summary Judgment on Breach of Warranty (DN 162) is **GRANTED**;

(2) Dutchland and Paul Stoltzfus's Motion for Summary Judgment on Claims Against and Related to Paul Stoltzfus (DN 164) is **DENIED**;

(3) ISP's Cross-Motion for Summary Judgment on Dutchland's Statute of Limitations Defense (DN 171) is **GRANTED IN PART** and **DENIED IN PART**; and

(4) Dutchland's Motion to Bifurcate (DN 166) is **DENIED** as moot.